## OLBERDING v SMITH

Ohio Appeals, 1st Dist, Hamilton Co

No 4461. Decided January, 1934

Arthur Wood, Cincinnati, for plaintiff in error.

Carl P. Pieper, Cincinnati, and Dennis T. Hackett, Cincinnati, for defendant in error.

## OPINION

By ROSS, J.

This is a proceeding in error from the court of common pleas, wherein judgment was rendered in favor of the plaintiff who sought to quiet his title

to certain real estate in the City of Cincinnati, against covenants in his deed and an agreement entered into by his grantor providing that the property now owned by him should not be used for business purposes. John Mueller owned Lots 6 and 11 in Covedale, now Cincinnati, Ohio. While still the owner of Lot No. 6, he contracted with the plaintiff in error, for a valuable consideration, that neither he nor his heirs or assigns would ever use Lot No. 6 (which adjoined Lot No. 11 at right angles) for business purposes. He then sold Lot No. 11 to the plaintiff in error, and later the defendant in error became the owner of Lot No. 6. The restrictive covenants were preserved in the deeds of both plaintiff in error and defendant in error, be recital and references.

It is beyond question that the adjacent area for some considerable distance is entirely devoted to business purposes. The evidence upon this point is conclusive beyond the peradventure of doubt.

The defendant in error is about to erect upon his premises, Lot No. 6 (the lot against which the original owner for a consideration placed a restriction against use for business purpose) a building, which can have no other use than that of business.

The plaintiff in error, relying upon the restrictive covenants directly forbidding such use of Lot No. 6, now owned by defendant in error, threatened action to prevent such use. The defendant in error then sought by the instant proceeding to quiet his title against the restrictions. He introduced in evidence the zoning ordinance of Cincinnati, defining the area icluding the lots in question as Business "A"—that is distinctly business property. This ordinance can ▮▮▮▮▮▮ ▮ have no effect to abrogate the limitations of use. Vorenberg v Bunnell, et, 153 N. E. 884. Crawford, et v Senosky et, 128 Oregon 229. Dolan et v Brown, 338 Ill 412 (170 N. E. 425). Ludgate v Somerville, 121 Oregon 643 (54 A. L. R. 837). See also Note in 54 A. L. R. page 843.

This is not a case involving a general scheme of limitation applicable to a subdivison such as was dealt with in **Dixon v The Van Sweringen Co., 121 Oh St 56**, nor is the rule therein stated applicable. The covenant is rather a personal agreement not running with the land, such as was construed by the Court in **Solar v Ruehlman Jr., 33 Oh Ap 224**, and the rule laid down in **Kiley v Hall, 96 Oh St 374** is pertinent. The second paragraph of the syllabus in Kiley v Hall is:

"A lot owner cannot maintain an action to enforce by injunction the observance of restrictions contained in the deed of another lot owner where it does not appear that the latter purchased his lot with notice of a general plan for the improvement of the lots of the allotment in accordance with the restrictions contained in his deed, or with notice that such restrictions were inserted in his deed for the benefit of the owners of the other lots in the allotment."

In **Brown v Huber et, 80 Oh St 183,** it is stated in the syllabus:

"1. A covenant in a deed of conveyance, whereby the grantor, in part consideration for said conveyance, stipulates and agrees for himself, his heirs, and assigns, touching and concerning an adjacent lot which he then owns, "that the only building put upon said lot shall be a residence and the necessary attachments, and that it shall be used for no other purposes than that of a family residence, and shall cost not less than $5,000 for the residence alone" is a covenant binding on the grantor and all persons claiming under him with notice of the same, and its observance may, in equity, be enforced by injunction.

"2. Where such covenant or restriction is still of substantial value to the dominant lot notwithstanding the changed condition of the neighborhood in which said lot is situated, a court of equity will restrain its violation."

This was a case "where a grantor of property, upon the sale of part of it, covenanted with reference to the remainder that a building line would be maintained for the benefit of the part sold, it was held that the covenant was enforceable by the grantee's successor against the grantee of the restricted property, in spite of a showing that at the time of the imposition of the restriction the section was a very high-class residence neighborhood, with large lots for residence purposes, but that since that time in the near vicinity there had developed a business center with a number of business blocks, mostly small, containing stores and shops, that two large dwellings in the immediate vicinity had been torn down and smaller buildings erected in their place, thereby dividing the large lots, that located within two blocks were a large apartment house and kindergarten school, and that two of the large-sized residences had been converted into two-family flat buildings, such facts not showing that there had been such a radical change in the character of the neighborhood as could be held destructive of the covenant relied on, or such as would render its enforcement oppressive and inequitable." (54 A. L. R. 833).

This case is not an authority where, however, there has been a radical change from residential to business use in the immediate neighborhood of the property in question. The locality involved here originally was very thinly settled, and was on the whole of such a nature that it could easily have developed into a purely residential district in which case the covenant would at this time have had some real value. Today it is almost entirely devoted to business purposes. Uses of the buildings now in the vicinity include a bank, filling station, poolroom, bakery, moving picture theater, beauty parlor, news stand and shuffle board, soft drink stand, Building Association, Shoe Shop, apartment houses, ice and fuel and general stores. The streets have become public highways, concrete with curbs, and one street is now a main artery of traffic, equipped with traffic lights. These changes have all occurred since making the original covenant. It is obvious that the only "value" remaining in the holder of the restrictive covenant is one of duress, that is, to compel the payment of a consideration for its release. This is not the meaning of the term "value" as used in Brown v Huber, supra. The term as there used means that the owner of the restrictive covenant will suffer a distinct loss in the value of his property. It means that if the property restricted is used for business purposes, it will directly affect the value of the property in favor of which the restriction runs. Such is not the case here.

The authorities are almost in accord that where such a change has occurred as to show that the present situation could not have been in the contemplation of the parties to the original agreement, that its enforcement will no longer be required in a court of equity, and such remedy as the possessor of the restrictive covenant has must be found in a court of law. Starkey, et v Gardner, 194 N. C. 74, (54 A. L. R. 806). See note in 54 A. L. R. 812.

"Although it is a principle of equity that a contract is to be judged as of the time at which it was entered into, and if fair when made the fact that it has become a hard one by the force of subsequent circumstances or changing events will not necessarily prevent its specific performance, it is also a rule that chancery will not interfere to grant specific performance where there has been a great change of circumstances. Therefore, where lands have been conveyed with restrictive covenants limiting their use, and the condition and character of the adjoining land with reference to those conveyed have so changed as to render the restriction in the conveyance inapplicable according to its true intent and spirit, equity will not interpose by injunction to prevent the breach of the

covenant, but will leave the party aggrieved to his remedy at law." 25 R. C. L., pages 253, 254.

See also: 27 R. C. L., pages 768, 773.

It is our conclusion, therefore, that there has been such a change in the conditions originally prevailing at the time of the inception of the restrictive covenant that it would be inequitable now to enforce such covenant, which can have at this time no other value than that of mere coercion, there being left no intrinsic value in the covenant as far as the same concerns the use of the property formerly benefited by the restriction in its favor. In the absence of a showing that mere duress is not the sole quality left in the restriction, we must agree that the trial court was correct in granting equitable relief, and quieting the title to the property restricted.

The judgment is affirmed.

HAMILTON, PJ. & CUSHING, J., concur.