McBride et al. *v.* Behrman et al.

(No. 21495—Decided August 4, 1971.)

Common Pleas Court of Highland County.

*Mr. Ronald L. Swonger*, for plaintiffs.
*Messrs. Duncan & Phillips* and *Mr. Ralph W. Phillips*, for defendants.

Hottle, J. The within action for injunctive relief having come on for hearing before the undersigned, upon consideration of the evidence, stipulations, interrogatories, and answers thereto, arguments of counsel and the law, the court grants the prayer of the complaint.

The stipulations herein read as follows:

"1. That the named plaintiffs are the owners of the various lots in Mountain View Colony Subdivision, Paint Township, Highland County, Ohio, as alleged in paragraph two of the Complaint.

"2. That Mountain View Colony Subdivision and McCoppin Mill Road Colony Subdivision were owned at one time by one owner, and said owner caused the restrictions contained in paragraph four of the complaint to be inserted in all deeds to lots sold and defendants purchased their subject lot with notice of said restrictions.

"3. That shortly before July 1, 1970 (date of filing of the Complaint) defendants caused a mobile home or house

trailer to be moved or placed on their lot in Mountain View Colony Subdivision, and with accomplaning (*sic*) water and sewerage outlets to be installed.

"4. That the interrogatories submitted by defendants to plaintiffs and the answers to said interrogatories are filed with this court, and are to be considered as evidence, by both parties.

"5. That the record of the hearing for the preliminary injunction, along with stipulations of counsel and various exhibits are also to be considered as evidence in this final hearing, of both parties of record.

"6. Counsel of the parties agree that the basic issues to be determined by the court are as follows:

"a. Whether or not the act of placing or installing a mobile home or house trailer by defendants on their lot in Mountain View Colony Subdivision with improvements as indicated by evidence violated any of the restrictions of record in said Subdivision.

"b. Whether or not a permanent injunction will lie as prayed for by the plaintiff in their complaint, or as may be modified by the court."

Stipulation No. 6 states the question decided herein.

The restrictions mentioned in Stipulation No. 2 read as follows:

"1. The said premises shall be used for residential purposes only.

"2. All buildings shall be erected to conform with the building line of said colony. Any building erected on said lot shall set back at least 35 feet from the street or public thoroughfare line on which said lot or lots adjoins.

"3. No temporary structure will be permitted upon said premises for occupancy nor shall any unsightly structures be erected thereon at any time.

"4. No dwelling or residence having a value of less than $3,500.00 shall be built, constructed, erected, or moved upon said premises in said colony.

"5. All construction upon the premises herein conveyed shall conform with the building and sanitary codes of the state of Ohio.

"6. The foregoing restrictions, covenants, reservations and limitations constitute a part of the consideration for the premises herein and in addition to the foregoing, restrictions against anything offensive to a high class residence district will be imposed and all the foregoing shall run with the land and shall inure to the benefit of any and all lot owners in said colony.

"7. The several covenants and agreements hereinbefore contained in paragraphs numbered 1 to 6 inclusive shall run with the land hereby conveyed and shall be binding upon the grantee, their heirs and assigns forever."

This court has been unable to find any Ohio case precisely on all fours with the instant case. However, two Ohio cases are quite similar: the first, in time, being *Swigart* v. *Richards*, 87 Ohio Law Abs. 37, decided by the Common Pleas Court of Licking County in 1961. The restriction dealt with there, reads as follows:

"No building shall be erected or maintained upon any lot except one residence designed and used for occupation by a single family and not more than one and one-half stories in height on water front row only. Such residence building may include a garage as an integral part thereof."

Judge Holtsberry stated at p. 40:

"The mobile home mode of living has created many social and economic problems resulting in a great amount of regulatory legislation over the country, conflicting and confusing court decisions, some perhaps due in some degree to unfamiliar knowledge of factors involved, and lack of guiding precedent.

"This new concept of home must, at least at its present stage of development, be regulated not solely as a vehicle, or solely as a building, but as a combination of both. (The very design and structure of the present day mobile home is a vehicle because of its wheels and design for highway movement by being towed by another vehicle.) It is subject to the laws of the road and is expressly defined and included under certain Ohio motor vehicle statutes. (R. C. 4501.01 (I).) Said Section provides:

"(I) House trailer means any self-propelled and non-self-propelled vehicle so designed, constructed, reconstructed, or added to by means of accessories in such manner as will permit the use and occupancy thereof for human habitation whether resting on wheels, jacks, or other foundation and used or so constructed as to permit its being used as a conveyance upon the public streets or highways."

Judge Holtsberry also cited and discussed R. C. 4503.06, regarding revenues derived from house trailers for the state.

At the bottom of p. 41 he pointed out that restrictive covenants in deeds, are interpreted generally by those rules used to interpret contracts, and that a use of property restriction is strictly construed, ref. 175 A. L. R. 1191-1215. See also *Bove* v. *Giebel*, 169 Ohio St. 325; 15 Ohio Jurisprudence 2d, Section 119 "Covenants" and citations thereat; citations at p. 101 of *Property Owners' Assn.* v. *Driscoll*, 106 Ohio App. 95.

Judge Holtsberry, top of p. 41, of his opinion, stated:

"It is stated in 15 Ohio Jurisprudence 2d 106 (Sec. 118) that a fundamental consideration in construing stipulations restricting the use and enjoyment of real property is the intention of the parties as evidenced by the terms of the restrictions and the surrounding circumstances, both of the parties and subject matter."

At the bottom of p. 40 the Judge stated:

"In considering such a case as the instant case, many factors such as dimension, alterations, existing applicable legislation and court decisions, the particular restrictive covenants, apparent intent of the covenants, together with all facts and surrounding circumstances must be carefully considered by a court in reaching a decision. *Most mobile home cases arising today must be decided upon the particular facts and circumstances before a court.*" (Emphasis added.)

The other similar Ohio case is *Yeager* v. *Cassidy*, 20 Ohio Misc. 251, decided by Judge Marshall of the Scioto Common Pleas Court in 1969. The restrictions contained in the deeds in that case read as follows:

"1. Said premises shall be used exclusively for residence purposes. There shall not be erected more than one private dwelling, with incidental or necessary outbuildings. Said dwelling shall be of not less than four rooms with a solid foundation, and cost not less than $5,000.00.

"2. No part of such dwelling, nor outbuilding, shall be erected on said premises within twenty (20) feet of the street, nor within five (5) feet of either side line of said premises.

"3. The several covenants and agreements hereinbefore contained shall run with the land hereby conveyed, and shall be binding upon the grantees, their successors and assigns."

The question decided, pertinent to the instant case, is posed by Judge Marshall at pgs. 253 and 254. "The remaining question to be resolved is whether or not the mobile home, if placed upon the lot, is in violation of the language of the covenant, to wit, 'there shall not be erected more than one private dwelling * * * with a solid foundation.' "

Inasmuch as, in the instant case, there has been discussion of the improvements proposed by defendant, it might be well to quote Judge Marshall as to improvements in the *Yeager* case, at p. 253:

"The mobile home cost the defendant $5,500. He has expended the sum of $1,542.90 to date in constructing a concrete and block foundation, grading the site and installing a septic tank, water, gas, and electric lines and drainage tile on the premises; and the plans for completion include the construction of concrete floored porches, ornamented by iron railings and roofed with aluminum awnings, opposite the front and rear doors, at an additional cost of $1,820, making a total cost of $8,862.90.

"The mobile home has five rooms, including a bathroom, and underlying three sides of it is a block foundation erected upon a concrete footer, which foundation can be extended to the fourth side, and is capable of supporting the structure."

At p. 254, Judge Marshall indicated the rules of interpreting restrictions on the free use of property, and quotes

from citations already referred to herein; he then quotes: "The first and most fundamental of these rules of course is that of arriving at the intention of the parties * * *," and on p. 256 indicates that he and Judge Holtsberry arrive at a different conclusion in that he found a house trailer to be a building and Judge Holtsberry not a building. He does quote, with approval, Judge Holtsberry's statement at the bottom of p. 40, already quoted above; therefore, they have no difference of opinion that intention is the basic controlling factor. Assuming this to be correct, in which the undersigned concurs, a comparison of the facts and circumstances involved is necessary to determine the question presented herein.

There are two distinctive and important facts and circumstances in the Scioto County case that are absent in the instant case: one is discussed at p. 254 of Judge Marshall's opinion, wherein it is pointed out that the establisher of the subdivision testified that he did not intend to exclude mobile homes. Judge Marshall states:

"This case contains an extremely unusual facet in that E. T. Davis, the establisher of the subdivision, testified that in creating the restrictions, he did not intend to exclude mobile homes per se; that he did not consider the home of the defendant to be in violation of the restrictions he had imposed upon the lots in his subdivision; and that his purpose in making the restrictions was to prevent the erection of "shacks" and "out-houses" on the lots. Applying the rule of construction as set forth above, the statement of the subdividor that his restrictions were not intended to prevent the placing of suitable mobile homes on the lots, which do not violate any other provision of the restrictions, would appear dispositive of the issues herein."

The court then went on to discuss the terms "building," "house," and "mobile home," among others, and referred to *Schaeffer v. Gatling*, 137 So. 2d 819 (Miss.), wherein the court indicated that the restriction could have been applicable if "temporary residences" had been prohibited; it should be pointed out, now, that restriction No. 3 of the within case includes "temporary structure." It is fair

to interpret the *Schaeffer* decision to mean that house trailers are considered temporary residences, and therefore would be prohibited by inclusion of the term in a restrictive covenant.

The second important distinctive fact and circumstance in the *Yeager* case is that, although no house trailers or mobile homes had been erected or placed upon any of the lots in the subdivision, except the defendant's, there were at least four on neighboring premises within the view of the defendant's lot. The court then indicated that where the character of adjoining land is changed as to render the restriction inapplicable as to its true intent and spirit, no injunction would issue, citing *Olberding* v. *Smith*, 34 Ohio Law Abs. 84. A reading of the *Olberding* opinion convinces this court that it is inapplicable to the instant situation. At p. 87 the decision pointed out that the locality, originally, was quite thinly settled and that it could have easily developed into a purely residential area (the covenant prohibits the use for business purposes on certain lots only, in the development), and that it now was almost entirely used for business purposes, some of which were: banks, filling stations, pool rooms, bakeries, movie theater pictures, beauty parlors, restaurants, newsstands and shuffleboard, softdrink stands, partnership associations, shoe shops, apartment houses, ice and fuel, and general stores. Mountain View Colony Subdivision, with which we are concerned, is contiguous with McCoppin Mill Road Colony Subdivision and these are two of the three subdivisions within the Rocky Fork Lake development area which do not have house trailers or mobile homes upon any of the lots. It is fair to say that Rocky Fork has become a house trailer lake development, with the exception of these three areas. There are less trailers in view of the Mountain View Colony Subdivision lots than there are of any other subdivision in the immediate Rocky Fork area. This is not to say that one cannot see any trailers from said subdivision, but the court is saying that it is the best which can be done under the circumstances (there must be a demarcation line somewhere), and the fact that

one could see some trailers from some point in "Mountain View" does not change the neighborhood within the holding of *Olberding*.

"It has also been held that while changes in the charracter and use of property near but outside an allotment may be such as to justify a refusal to enforce a restriction within the allotment, it must be shown that the changes are of a substantial character." 15 Ohio Jurisprudence 2d, Sec. 134, p. 133 "Covenants."

The authorities cited held restrictions effective, there being insufficient change in the character of use of the property nearby but without the subdivision. A substantial value in the restrictive covenants remains to plaintiffs, here. See also 4 A. L. R. 2, Sections 20 and 24, pp. 1160-64, 1170-77; *Winfrey* v. *Marks*, 14 Ohio App. 2d 127. For definition of "neighborhood," see *Maurer* v. *Austin Square*, 6 Ohio App. 2d 41, Syllabus 2. Comparison of the facts and circumstances in *Yeager* with the facts and circumstances of Rocky Fork is impossible from a reading of the former decision, but the latter situation does not remotely parallel *Olberding*. Judge Marshall concludes his opinion by stating, "Unless such dwellings ("pre-built homes, mobile or otherwise") are expressly and explicitly excluded by the terms of a protective covenant, their use should not be enjoined, *provided that in each case, the dwelling otherwise conforms to the spirit of the restriction.*" (Emphasis added.)

In *Thodos* v. *Shirk*, 79 N. W. 2d 733 at p. 737, the Iowa Supreme Court stated:

Appellants contend, however, that the restrictive terms used are ambiguous and vague and that the presumption relating to the free use of land overcomes any inference to the contrary, citing *Peterson* v. *Gales*, 191 Wis. 137, 210 N. W. 407, 47 A. L. R. 956; *Melson* v. *Ormsby*, 169 Iowa 522, 151 N. W. 817; 14 American Jurisprudence, page 621; *Foos* v. *Engle, supra*; *Greer* v. *Bornstein*, 246 Ky. 286, 54 S. W. 2d 927. We find in most jurisdictions courts do not feel themselves bound by the terms of such restriction, but resort to proof of the surrounding circumstance to deter-

mine the true intent of the parties thereto when originally established. The result is most unfortunate for the bench and bar, for it has resulted in many cases on each side of the controversy, some of which are impossible to distinguish. We therefore hesitate to cite or discuss these many cases herein. Dean Pound considers such restrictions as servitudes upon the land similar at least to easements and profits, and in this view we see in general at least the benefits may be considered appurtenant to the land in the development scheme and therefore run with it. See 28 Va. L. Rev. 1067.

The common factor, in *Yeager, Swigart* and the instant case basic to decision, is intention at the time the restrictions originated. Plaintiffs' and defendants' counsel refer to the decision of the undersigned in this court, *Sullivan et al.* v. *Smith* (1961), No. 18,743, and reach different conclusions as to its import.

Defendant's interpretation that the entry journalized October 15, 1961, reflected the court's finding, based upon agreement of the parties, is not quite accurate. The court's decision filed May 16, 1960, reflects no qualification in granting temporary injunctive relief against the placement of trailers in McCoppin Mill Road Subdivision. Referring to the entry, the defendant there presented elaborate plans which would conform to the permanent-type structures on the subdivision, and the injunction was stayed for a period of over three years so that he could accomplish same. However, instead of following the plan, he moved out and no trailer is placed on any lot in said McCoppin Mill Subdivision. The question was not moot, rather a permanent injunction was granted with specific reference to the restrictive covenant, identical to No. 3 herein; therefore, the *Sullivan* case cannot be used as authority to substantiate defendant's contention herein.

The restrictions go further here than the *Swigart* or *Yeager* cases, the character of the area has not substantially changed, the plans presented by defendant do not begin to approach the permanent-type as those in *Sullivan*, the developer was not available to testify and his intention

must be gleaned from the circumstances. For twenty years, houses of permanent-type construction have been constructed on both subdivisions containing common deed restrictions, and efforts have been made to keep out house trailers whenever such threatened to invade the subdivisions. The subdivision under consideration is one of only three in the immediate Rocky Fork Lake area which are free of trailers, and although the restrictions do not explicitly name trailers, interpretation of them must be from their entirety.

Although not deciding the question before us, the 6th Dist. Ct. App. in *Exchange Realty Co.* v. *Bird*, 16 Ohio Law Abs. 391, stated at bottom p. 394: "It is thus evident that, to give meaning and effect to such language, it must be used in connection with and confined within other restrictions and limitations and construed with them as a whole."

A reading of restrictions one, three, and six, without even reference to the other four, leaves little doubt as to the intention of the originator; otherwise, house trailers would long ago have appeared in the subdivision and no attempt would have been made to exclude them. Although on different facts, the case of *Wallace* v. *Clifton Land Co.*, 92 Ohio St. 349 at 359-60 (quoted with approval in *Berger* v. *Van Sweringen Co.*, 6 Ohio St. 2d 100 at 106-107), statement in the decision has value here:

"These restrictions were not imposed for the benefit of the original proprietor, further than the fact that the general and uniform plan of restricting the allotment to resident purposes might contribute to a readier sale of the lots. The real purpose of the restrictions was to guarantee to the purchasers a quiet residence locality, where they might build their homes and live apart from the noise of manufacturing and the bustle and confusion of the marts of trade. The great majority of these purchasers undoubtedly bought with this idea in view. Their grantor kept faith and imposed like restrictions upon all the lots in this allotment that were similarly located. The purchaser who bought with the intent or purpose of disregarding the restrictions and devoting the property pur-

chased by him to any purpose that might suit his whim or his business needs, regardless of the restrictions written in his deed, has no standing in a court of equity."

Defendant would urge that the removal of the wheels and tongue and the building of a permanent foundation of concrete and cement block with the patio improvement meets the restrictive covenants. The court agrees with plaintiffs in that the house trailer is still a house trailer, under the plans submitted by defendant, and points out that there would be no reason that the house trailer could not be moved, after the wheels and tongue were replaced, leaving the foundation in its harshness on the lot. (See *Jones* v. *Beiber*, 103 N. W. 2d 364, Headnote 4, Iowa.) Judge Holtsberry at p. 39 in *Swigart*, pointed out that "Some are of the opinion that the tendency of most modern trailers is to regard mobility not as a prime consideration of ownership, but as a reserve factor." This reserve factor is present here, under the circumstances presented by the evidence. It was in *Sullivan*. (See *Pagel* v. *Gisi*, 286 P. 2d 636 Colo.)

Considering the terms of restrictions common to all deeds, the surrounding circumstances of the parties and the subject matter, the type building done in the subdivision for 20 years and reasons for it, construing the restrictions as a whole, this court can come to no other conclusion that the words "temporary structure" of restrictive covenant No. 2 in all deeds are not ambiguous and include "house trailer" or "mobile home," especially in relation to "unsightly structures" used in said restriction and to "high class residence district" used in restrictive covenant No. 6 in all deeds. Injury to plaintiffs by violation of the restrictive covenants is found to be irreparable.

*Judgment for plaintiff.*