E. Howard Ringrose, J.
Francis J. Manley and Lila K., Ms wife, bring tMs action to enforce, by injunction, compliance with a restrictive covenant contained in a deed from them of a lot to the defendants, Robert B. Draper, and Alice S., Ms wife, which reads as follows:
“ 1. The premises shall not be used for any commercial purposes.”
“ 2. No trailers shall be located .on the premises except the parties of the second part may live in a trailer on the premises if they so desire while they are building a house.”
The dimensions of the defendants’ lot is approximately 100 by 175 feet and fronts on Coombs Road in the Town of Trenton, Oneida County, New York.
The lot of the defendants is in a rural area and is from a tract of about 250 acres of farm lands in the Towns of Trenton and Marcy, bounded on the north by Coombs Road and on the east by Class Factory Road, and was acquired by the grantors, Kenneth S. Earl and Francis N., his wife, from Frank Demo, as .executor of the last Will and Testament of Frank C. McLonghlin, deceased, by executor’s deed, executed on July 10, 1957, and recorded in the Oneida County 'Clerk’s office on the same day.
Thereafter, the Earls conveyed from said tract to Cordon L. Potter, Jr., and Joyce W. Potter, his wife, by deed dated on December 4, 1957, and recorded in the Oneida County Clerk’s office on December 5, 1957, 1.57 acres of land, having a frontage on Coombs Road of 216.5 feet. The deed contained the same restrictions above quoted.
Subsequently, the Earls conveyed a lot 175 feet laterally and 100 feet wide, fronting on Coombs Road, to William Hadfield and Dorothy K., his wife, as tenants by the entirety of a one-half interest and Robert T. Cfaham, as tenant in common of an undivided one-half interest. This deed also contained the same restrictions quoted above.
Thereafter, the plaintiffs herein acquired title to the remaining lands owned by the Earls.
The defendants acquired title to the lot purchased by the Hadfields and Craham on or about January 30, 1962, which contained the covenant as to trailers.
*615 It is the claim or contention of the defendants that their home is permanent in type and construction and not in violation of the restrictive covenant in their deed.
It was established by the evidence that it rested upon a foundation of concrete piers set four feet below ground level and filled in with concrete blocks. That the undercarriage, including the wheels, springs and towbar, were removed. The concrete from the bottom of the trailer home to the ground level is faced with Permastone on concrete board fastened to the trailer by hangers welded to the bottom of the frame. The yard has been landscaped, .shrubbed and a cedar hedge planted about the lot. A wood frame garage has been erected to the east of the home on a concrete foundation.
Concrete steps, with wrought iron railing, were constructed to the entrance to the living room and steps of the same material, with wrought iron railing, at the easterly and to the entrance to the kitchen.
The dwelling is completely equipped with running water from a main in the highway supplying water to the City of Utica, and with electric current from the lines of a power company, also maintained in the area. It has an electric washer and dryer.
It has living room, kitchen, dining area, two bedrooms and bathroom with combination tub and shower.
The furnishings are depicted by the photographs in evidence as Exhibits 15, 16, and 17, and are the equivalent or superior to medium-priced homes of modern design and construction.
The living room is 16 feet 6 inches by 14 feet; the kitchen 10 by 7 feet; one bedroom 8 by 8% feet; and the .other 9% by 10 feet; and the bathroom 6 by 8% feet.
The dwelling is 57 feet long by 10 feet wide, with an expansion of 6% feet by 14 feet.
The mobile trailer home was converted into an alleged permanent dwelling, with all modern conveniences, at a cost to the defendants to date of $2,927.31. The cash sale price of the trailer was $8,200 which, exclusive of the cost of the lot, represents a total investment of $11,127.31.
The context of the restrictive covenant persuades the inference that it was designed to exclude an influx of travel trailers of transients which would depreciate the value of the area for substantial permanent homes, and it may be noted that the locality is developing at an accelerated pace for residential occupancy, owing to accessible public utility services, improved highways and convenient driving distance to the cities of Rome and Utica.
*616 Mrs. Lilliam P. Sleight, the executive director and legislative agent for the New York Mobile Homes Association, testified that the industry is now producing twin units varying in size from 10 to 12 feet wide and from 35 to 55 feet long, which, when placed upon a foundation and bolted together, provide a home 20 to 24 feet wide and 40 to 55 feet or more long. That during this past year the industry has turned out 120,000 mobile homes.
The accelerated demand for mobile homes and the advantages of this type of dwelling were editorially noted in the July 18, 1963, edition of the Utica Daily Press, by republication of an article by Gene Ritzinger in the Wall Street Journal wherein it was stated that during the year 1962, ‘ ‘ the factories shipped one mobile home for every 13 housing units started in the U. S.; some 3.5 million Americans now live in trailers ”.
The issue thus raised is without controlling precedent in this jurisdiction. The disposition of the controversy, therefore, turns upon the limitations imposed or reasonably implied from the context of the covenant.
Since the law favors the free and unobstructive use of real property, any ambiguity in language purporting to impose any restriction will be construed strictly against the covenantee. (Clark v. Jammes, 87 Hun 215; Cook v. Murlin, 202 App. Div. 552, affd. 236 N. Y. 611; Schoonmaker v. Heckscher, 171 App. Div. 148, affd. 218 N. Y. 722; Reformed Protestant Dutch Church v. Madison Ave. Bldg. Co., 214 N. Y. 268.)
The word ‘ ‘ trailers ’ ’ as used in the restriction contained in the defendants’ deed includes a wide variety of mobile vehicles from U-Hauls, farm and freight trailers to camp, vacation, business office and mobile home trailers.
The claim of the defendants that their mobile home has been fully converted into a permanent residence, with all the conveniences and attributes of the most modern dwelling, has been conclusively established by the proof.
Undoubtedly, it could be moved from its foundation to another location, but so can any wooden frame constructed house according to the testimony of the witness, Mrs. Sleight.
The majority of cases, both in this and other jurisdictions, involving this question have arisen where an alleged violation of a zoning ordinance was involved.
The following authorities cited by the defendants appear to sustain the conclusion above reached. (City of Astoria v. Nothwang, 221 Ore. 452; Lescault v. Zoning Bd. of Review of Cumberland, 91 R. I. 277; Matter of Willey, 120 Vt. 359; Anstine v. Zoning Bd. of Adjustment of York Township, 411 Pa. 33.)
*617 The logic in .the Willey case (supra, p. 364) is particularly applicable to the instant action wherein the court said: “Mr. Willey’s house trailer was mobile when it was brought to the lot he had leased. But the essential facts are that it was built for human habitation, has all the attributes of a dwelling, was used as such, and became fixed to the realty by various connections. The possibility of its future mobility might have been reduced by the use of a different foundation. But the question before us is not one of possible future use, but its actual use at the time the application was granted ”.
If it is the intention of the plaintiffs to exclude all construction on the lots sold by them except homes of a particular type, size and cost, the restriction should be specifically phrased to eliminate the apparent ambiguity as to meaning. It follows that the defendants are entitled to judgment, dismissing the complaint, with costs.