Virgil R. HUSSEY et al., Appellants,

v.

J. B. RAY, Appellee.

No. 523.

Court of Civil Appeals of Texas, Tyler.

Dec. 17, 1970.

Joe Tunnell, Tyler, for appellants.

James R. Lewis, Tyler, for appellee.

MOORE, Justice.

This is an appeal from a summary judgment. Appellants, Virgil R. Hussey and others, residents and owners of certain lots situated in the Hussey Addition, Unit No. 1, to the town of Winona, Texas, brought suit against Appellee, J. B. Ray, seeking an injunction against appellee enjoining him from maintaining a mobile home upon one of the lots in said subdivision. As grounds for cause of action appellants alleged that appellee had violated a restrictive covenant placed thereon by Virgil R. Hussey, the original owner and developer of the Hussey Addition. The restriction alleged to have been violated is as follows:

"No trailer, tent, shack, stable or barn shall be placed, erected or be permitted to remain on any lot, nor shall any structure of a temporary character be used at any time as a residence."

Appellee answered with a general denial. Thereafter, both parties filed motions for summary judgment. After a hearing upon the motions, the trial court entered a summary judgment in favor of appellee, J. B. Ray, and denied the motion of appellants, thereby denying them any injunctive relief

as prayed for in their petition. From this judgment appellants duly perfected their appeal.

The facts are not in dispute. It is agreed that the only issue presented for determination is whether the undisputed facts show, as a matter of law, that the structure maintained by appellee violates the above-quoted restriction.

The record shows that appellee and his wife purchased the lot in question in the Hussey Addition on July 14, 1964. Subsequently, on or about November 25, 1969, they purchased a new mobile home at a cost of $4,250.00 and moved the same on the lot. The mobile home was 12 feet in width and 52 feet in length, and contained two bedrooms, a living room, kitchen and bath and was fully equipped with a cook stove, heater, refrigerator, and other facilities. After placing it on the lot, they removed the wheels therefrom and placed it upon a permanent concrete block foundation. Appellee obtained connections to the city water lines, electric power lines, and telephone lines, and installed a permanent type sewage system. At all times subsequent to the erection of the structure, appellee and his wife used the same as their permanent home and have not used it for any other purpose.

The dedicating instrument containing the restriction shows that the subdivision was composed of 34 lots. Other provisions restrict the use of the lots to residential use with one one-family dwelling per lot. There is nothing in the instrument restricting the size, shape or composition of the residential building, nor is there anything therein as to the minimum cost of construction. The dedicating instrument made no attempt to define "trailer." Under such circumstances the commonly accepted meaning will be applied. Crawford v. Boyd, 453 S.W.2d 232 (Tex.Civ.App., Ft. Worth, 1970, writ ref., n. r. e.).

Webster's New International Unabridged Dictionary (3rd Edition), defines "trailer" as "4c: a nonautomotive highway * * *

vehicle designed to be hauled (as by a tractor, motor truck or passenger automobile)."

It defines "vehicle" as "a means of conveyance."

" 'In construing covenants or restrictions as to the use of property, the circumstances and conditions surrounding the parties and property must be considered as well as the manifest object of the grant or restriction. So, the intent of the parties and the object of the deed or restriction should govern, giving the instrument a just and fair interpretation.' 26 C.J.S., Deeds, § 163;" Stubblefield v. Pasadena Development Co., 250 S.W.2d 308 (Tex.Civ.App., Galveston, 1952, n. w. h.).

The case of Baker v. Henderson, 137 Tex. 266, 153 S.W.2d 465, by the Supreme Court of this state sets forth other fundamental rules regarding the construction of restrictive covenants as follows:

"Restrictive clauses in instruments concerning real estate must be construed strictly, favoring the grantee and against the grantor, and all doubt should be resolved in favor of the free and unrestrictive use of the premises.

"Being in derogation of the fee conveyed by the deed, if there be any ambiguity in the terms of the restrictions, or substantial doubt of its meaning, the ambiguity and doubt should be resolved in favor of the free use of the land. Settegast v. Foley Bros. Dry Goods Co., 114 Tex. 452, 270 S.W. 1014; Ragland v. Overton, Tex.Civ.App., 44 S.W.2d 768, 771; Holliday v. Sphar, 262 Ky. 45, 89 S.W.2d 327; Thompson on Real Property, sec. 3361; 18 C.J., p. 387, and authorities under notes 19 and 20; 26 C.J. S., Deeds, § 163. In Ragland v. Overton, supra (44 S.W.2d 771), the court quotes from Thompson on Real Property as follows: 'In this country real estate is an article of commerce. The uses to which it should be devoted are constantly changing as the business of the country

increases, and as its new wants are developed. Hence, it is contrary to the well-recognized business policy of the country to tie up real estate where the fee is conveyed with restrictions and prohibitions as to its use; and, hence, in the construction of deeds containing restrictions and prohibitions as to the use of the property by a grantee, all doubts should, as a general rule, be resolved in favor of a free use of property and against restrictions.' "

Appellants contend that the structure in its present condition, by whatever name called, is a "trailer" and is a structure of a "temporary character" and is therefore in violation of the aforesaid restriction. Appellee maintains that the structure was never a "trailer", but was a mobile home prior to its becoming affixed to the realty but even if it was, it is now a single-family residence and dwelling house, which is no longer mobile and which is as permanent as any other non-brick house in the addition or subdivision and compares favorably in appearance with the other structures therein.

The word "trailer" as used in the restriction includes a wide variety of mobile vehicles from boat, U-Hauls, farm, freight trailer to camp, vacation, business office and mobile home trailers.

■ As shown by the photographs in evidence, some of the lot owners maintained boat trailers upon their lots. Yet, the language of the restriction, if given a literal interpretation and carried it to its logical conclusion, as urged by appellant, would prohibit all trailers of every description, including boat and pleasure trailers. If the language of the restriction is to be accorded this interpretation, it could only mean that the parties intended to exclude all trailers solely because of aesthetic considerations and nothing else. As we view the surrounding circumstances presented by the record, we do not believe it was the purpose and intent of the parties to exclude all trailers purely for aesthetic considera-

tions. The lots in question were situated in a small town in a semi-rural area. The homes for the most part were of modest frame construction. A rather large oil storage tank was situated near appellee's lot. Under these circumstances, we do not believe the parties intended to so restrict the use and enjoyment of the lots purely for aesthetic considerations. Consequently, we think the restriction creates an ambiguity calling for judicial construction. In construing the restriction it is significant, we think, that it is contained in only one sentence. The first clause appears to exclude all "trailer", "tents" and "shacks," while the second clause excludes all temporary structures used for human habitation. In order to arrive at the true intent of the parties, both clauses must be construed together. Since the parties apparently did not intend to exclude all trailers, the question arises as to which trailers would be permissible. Thus the purpose of the restriction becomes important. To us, it appears that the primary purpose of the restriction, insofar as it relates to human habitation, was to prevent the property owner from using any temporary structure for a residence. Thus the use of a "tent" or "shack" would certainly be prohibited because such structures are temporary in character. The use of a "trailer" as a place of residence would likewise be prohibited if the same was temporary in nature. In determining whether the structure in question is temporary, the size, shape, appearance and other surrounding circumstances must be taken into consideration. The mere fact that it was moved upon the lot is not necessarily a controlling factor. Whether it is temporary in character becomes a question for the trier of the fact. Thus by interpreting the restriction in a light most favorable to the free use of the property, the only question remaining is whether or not the mobile home as presently situated on the lot can be said to be of a temporary character.

■ Appellees' claim that their mobile home has been fully converted into a per-

manent residence with all the conveniences and attributes of a modern one-family dwelling, appears to have been conclusively established. The structure erected on the lot was built for human habitation, has all the attributes of a permanent type dwelling, was used as such and was fixed to the realty by various connections. Undoubtedly it could be moved from its foundation to another location but so can any wooden frame house. It occurs to us that when viewed in a light most favorable to the free use of the lot, the restriction is not sufficient to prohibit the type of structure involved here. While we recognize that the question is not free from doubt and that there are cases from other jurisdictions holding to the contrary, we think our conclusion finds support in the following cases: Crawford v. Boyd, supra; Manley v. Draper, 44 Misc.2d 613, 254 N.Y.S.2d 739 (S.Ct., N.Y.); In re Willey, 120 Vt. 359, 140 A.2d 11.

If appellants had intended to exclude the construction of all homes except those constructed in particular manner, size, shape and cost, the restriction should have been specifically phrased so as to eliminate any ambiguity as to the type of construction not acceptable.

The judgment of the trial court is affirmed.