604 P.2d 818

Harry W. HEATH and Fern Heath, his wife, John M. Wood and Catherine Wood, his wife, Harry A. Alexander and Ruth Alexander, his wife, Forrest Brown and Marcia Brown, his wife, John B. Klein and Helen Klein, his wife, William K. Church and Hazel Church, his wife, and Edythe M. Polster, a single woman, Plaintiffs-Appellees,

v.

Ross E. PARKER and Anne Parker, his wife, Defendants-Appellants.

No. 12331.

Supreme Court of New Mexico.

Jan. 3, 1980.

Standley & Suzenski, Robert Suzenski, Santa Fe, Bert E. Newland, Deming, for defendants-appellants.

John F. Schaber, Deming, for plaintiffs-appellees.

## OPINION

EASLEY, Justice.

Harry and Fern Heath and eleven other subdivision lot owners (Heath) sued Ross and Anne Parker (Parker) to enforce a restrictive covenant against placing a "trailer" in the subdivision, claiming that Parker's double-wide mobile home fits that definition. The trial judge found for Heath. We reverse.

The sole issue is whether Parker's mobile home is a trailer under the circumstances here. The material facts are not in dispute. Parker purchased two lots in the Deming Ranchettes subdivision in 1975 and 1977. He bought a double-wide mobile home and moved it on the lots. The wheels, axles, and running gear were removed and sold, and the home was placed on a concrete and slump stone foundation. The mobile home has three bedrooms, two full baths and contains 1,440 square feet of floor space. A patio, a 200 square foot porch, sidewalks, and a 672 square foot two-car garage were constructed. A water well was drilled and a septic tank was installed. Both were connected to the mobile home. A conventional style asbestos shingle roof and alumi-

num siding were added to the home. A garden was planted and 210 trees were obtained to be planted.

Parker testified that he and his wife intended to reside in the home permanently. Photographs admitted into evidence showed that their home had the appearance of a conventional single-family dwelling. It compares favorably with other homes in the subdivision.

■ Restrictive covenants should be construed in favor of the free use of property. *Montoya v. Barreras*, 81 N.M. 749, 473 P.2d 363 (1970); *Hoover v. Waggoman*, 52 N.M. 371, 199 P.2d 991 (1948). We examine the particular facts of each case to arrive at a logical, reasonable, and fair interpretation. *H. J. Griffith Realty Co. v. Hobbs Houses, Inc.*, 68 N.M. 25, 357 P.2d 677 (1960).

■ In *Montoya*, we stated that "[r]estrictive covenants must be considered reasonably, though strictly, and an illogical, unnatural or strained construction must be avoided." (Citation omitted.) *Id.* at 750, 473 P.2d at 364. Any ambiguities in a restrictive covenant should be resolved in favor of the free enjoyment of the property and against restrictions. *Grossman v. Hatley*, 21 Ariz.App. 581, 522 P.2d 46 (1974). Restrictions on land use will not be read into covenants by implication. *Hannula v. Hacienda Homes*, 34 Cal.2d 442, 211 P.2d 302 (1949). When the covenant is uncertain in its application to the particular facts the intention of the parties to the covenants is controlling. *Becker v. Arnfeld*, 171 Colo. 256, 466 P.2d 479 (1970).

This is a case of first impression in New Mexico. We find *Hussey v. Ray*, 462 S.W.2d 45 (Ct.App.Tex.1970) and *Manley v. Draper*, 44 Misc.2d 613, 254 N.Y.S.2d 739 (1963) persuasive. Under similar facts, the Texas Court of Civil Appeals in *Hussey* held that the mobile home did not violate the restrictive covenant because it had been "built for human habitation, has all the attributes of a permanent type dwelling, was used as such and was fixed to the realty by various connections." 462 S.W.2d at 48. The *Hussey* Court stated:

There is nothing in the instrument restricting the size, shape or composition of the residential building, nor is there anything therein as to the minimum cost of construction. The dedicating instrument made no attempt to define "trailer." Under such circumstances the commonly accepted meaning will be applied. [Citation omitted.]

Webster's New International Unabridged Dictionary (3rd Edition), defines "trailer" as "4c: a nonautomotive highway * * * vehicle designed to be hauled (as by tractor, motor truck or passenger automobile)."

It defines "vehicle" as "a means of conveyance."

462 S.W.2d at 46.

The *Hussey* Court held that the purpose of the restrictive covenant was "to prevent the property owner from using any temporary structure for a residence." *Id.* at 47. It concluded that the mere fact that the home was moved upon the lot was not necessarily a controlling factor. It found that any wooden frame house could be moved from its location, as mobile homes can be moved.

*Manley, supra* is in accord with *Hussey*. The *Manley* Court stated that the defendant had fully converted his mobile home "into a permanent residence, with all the conveniences and attributes of the most modern dwelling . . . ." *Id.* 44 Misc.2d at 616, 254 N.Y.S.2d at 742.

The court in *Yeager v. Cassidy*, 20 Ohio Misc. 251, 253 N.E.2d 320 (1969) raised an important public policy issue as follows:

The court is of the opinion that the issue evoked by these proceedings is of broad import and will probably become critical as the use of pre-fabricated and pre-built structures becomes more prevalent.

. . . . .

The courts must acknowledge that pre-built homes, mobile or otherwise, which in

a given case may be more attractive in appearance and design than many conventional homes built completely on the site, are a part of our changing society, and give recognition to the fact that the law must be responsive to the best interests of those whom it is designed to serve. Unless such dwellings are expressly and explicitly excluded by the terms of a protective covenant, their use should not be enjoined, provided that in each case, the dwelling otherwise conforms to the spirit of the restriction.

*Id.* at 255–6, 253 N.E.2d at 323–4.

The covenants here were obviously designed to preserve the residential character of the neighborhood by preventing temporary structures from being used as homes. They do not specifically prohibit the construction of the type of home that Parker placed on his lots. It strains one's credulity to state that Parker's home is a temporary structure, or a "trailer". The fact that it was initially designed to be transported to its site by attached wheels and that it could be subsequently moved is not controlling. With modern equipment and ingenuity even brick buildings are movable.

These decisions should rest on the facts and circumstances of each case. Based solely on the evidence here, we hold that the Parker home is substantially the same as a conventional one-family dwelling and that the placing of the Parker home on his lots does not violate the letter or the spirit of the restrictive covenants.

The decision of the district court is reversed and the case is remanded with directions to set aside the judgment and enter judgment for Parker.

IT IS SO ORDERED.

SOSA, C. J., and FELTER, J., concur.