**YOUR HOME, INC.**

v.

**CITY OF PORTLAND** [1]

Supreme Judicial Court of Maine.

Argued June 19, 1980.

Decided July 30, 1981.

---

1. Your Home originally named the Zoning Board of Appeals as defendant. At oral argument, the parties stipulated that the City of Portland would replace the Board as defendant, as suggested by *Inhabitants of Boothbay Harbor v. Russell*, Me., 410 A.2d 554 (1980). In prior actions between these parties, the plaintiff is identified as Your Homes, Inc.

Norman & Hanson, Peter J. DeTroy, III (orally), Portland, for plaintiff.

Ranger & Copeland, Orville T. Ranger, Brunswick, for amicus curiae.

Charles A. Lane (orally), Ellen Egan George, Drummond & Drummond, David N. Fisher, Jr., Portland, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY and ROBERTS, JJ.

ROBERTS, Justice.

Your Home, Inc. appeals from a judgment of the Superior Court which affirmed an order of the Portland Zoning Board of Appeals denying Your Home's application for a permit to construct a mobile home park. Your Home challenged the constitutionality of the ordinance and it challenged the Board's action as a misinterpretation of the City's ordinance. Since we agree that the Board misinterpreted the ordinance, at least in part, we vacate the judgment in part.

### I. *Procedural History*

Your Home is a Maine corporation and owner of real estate in Portland. Part of this property is in an Industrial 2 (I–2) zone, while part is located in a Residential 3 (R–3) zone. Your Home filed its original application with Portland's Building Inspector for a permit to build a mobile home park in 1969. The permit was denied in May 1970 on the ground that such a use is not a permitted use in either the I–2 or the R–3 zone. (It cannot be determined from the record whether "such a use" referred to all mobile homes or to mobile home parks only.) Your Home appealed to the Zoning Board of Appeals pursuant to what was then section 602.24(A)[2] of the city zoning ordinance. The Board denied the appeal on the ground that the inspector's decision was correct. Plaintiff brought a complaint (docket no. 70–740), which was dismissed by the Superior Court on procedural grounds. An appeal was taken to this Court and we reversed. *Your Homes, Inc. v. City of Portland Board of Zoning Appeals*, Me., 285 A.2d 372 (1972).

A motion to amend the complaint in 70–740 was denied in November 1973. Your Home filed another application with the city building inspector, even though 70–740 had been remanded and was still a live action in the Superior Court. The new application was again denied. An appeal to the Board, this time pursuant to what was then section 602.24(B) of the ordinance,[3]

**2.** Section 602.24 then provided:

Appeal shall lie from the decision of the Inspector of Buildings to the Board of Appeals and from the Board of Appeals to the Superior Court according to the provisions of subsection 2 of Section 4954 of Title 30 of Maine Revised Statutes Annotated.

A. The Board of Appeals shall have the power to interpret the details of the application of this Ordinance and, for that purpose, may by unanimous vote, modify or reverse the action of the Building Inspector in issuing or denying building permits or certificates of occupancy when it appears that said action is based on an erroneous interpretation of the provisions of this Ordinance.

**3.** Section 602.24(B) then provided:

The Board of Appeals shall have the power by unanimous vote to permit uses which are not mentioned in this Ordinance to be located in a particular zone, provided that such uses are similar to and no more objectionable than those listed in said particular zone and can be proven to conform to the standards set forth in the paragraph entitled "External Ef-

was denied on the ground that the Board did not have jurisdiction under section 602.-24(B). A new complaint was brought in Superior Court in January 1974 (docket no. 74–109).

In November 1974, the Superior Court ordered the two actions, 70–740 and 74–109, joined. In 1975 Your Home amended its complaint to ask for a declaratory judgment that Portland's zoning ordinance *and trailer ordinance* are unconstitutional. In addition, the City of Portland was joined as defendant and service was made upon the Attorney General. In April 1977, the Superior Court entered an order, holding that plaintiff had no standing to challenge the trailer ordinance, chapter 316 of the Portland Municipal Code, under which it had never attempted to obtain a license. It then held that the Portland Zoning Ordinance does not completely exclude mobile home parks and is therefore not unconstitutional.

The Superior Court reached this conclusion for the following reasons. The Portland zoning ordinance provides for three general uses of property: residential, commercial and industrial, designated R, C and I. Each of these is in turn divided into areas designated numerically with the more restricted areas numbered lower (e. g., R–1) than the less restricted area (e. g., R–4). Listed in the ordinance are specifically permitted or prohibited uses for each zone. The provision in section 602.24(B) allowed approval by the Board of Appeals of uses similar to those expressly permitted, but only by unanimous vote. The Superior Court held that section 602.24(B) allowed the Board to permit mobile home parks if the Board finds the following:

1. That the mobile home park is similar to and no more objectionable than the uses listed in the particular zone in which the park is to be located;

2. The mobile home park can be proven to conform to the standards set forth in the paragraph entitled "External Effects" for the particular zone in which the park is to be located;

fects" for said particular zone and provided that such uses are not listed as permissible in

3. The mobile home park is not listed as permissible in a less restricted zone;

4. The mobile home park is not similar to uses permissible in a less restricted zone.

In addition to its constitutional ruling, the Superior Court ordered that the plaintiff's appeals from the Board be

remanded ... in order that a hearing may be conducted to determine whether in accordance with the provisions of § 602.24(B) the plaintiff should be allowed a permit for construction of a mobile home park on all or a portion of his property.

After oral argument before us, the parties stipulated that the entire section 602.24 was repealed and replaced effective July 1, 1974. The record of the proceedings before the Superior Court does not indicate that the court was ever made aware of this change, either before its 1977 decision or in the present action. The parties raised the issue of the repeal for the first time on this appeal, informing this Court that the new section 602.24 does not contain any "similar use" provision analogous to the old section 602.24(B), on which the Superior Court based its 1977 decision. The proceedings before the Board and the present action before the Superior Court were all conducted under the assumption that the former section 602.24(B) governed the case. At oral argument before us, the parties agreed to supplement the record by stipulation since the ordinance amendment is not subject to judicial notice. *Summit Realty, Inc. v. Gipe*, Me., 315 A.2d 428 (1974).

After the Superior Court's 1977 decision, the Board held hearings, and on September 1977, it again denied the application. The Board found that a mobile home park in an industrial zone

would corrupt the intent of the Zone which is to encourage industrial uses and those uses would be incompatible with the location of a development containing 276 dwelling units.

a less restricted zone and are not similar to uses permissible in a less restricted zone.

In respect to the Residential Zone,[4] the Board denied the permit on the ground that "a mobile home park is a commercial enterprise."

Your Home sought in Superior Court to amend its complaint in 70–740 and 74–109 in order to appeal the Board's 1977 decision. The Superior Court ordered that the appeal be treated as a new civil action, which was given docket number 77–1247.[5] Your Home again raised its constitutional arguments. In February 1979, the Superior Court held that the constitutional issues were "foreclosed" by the previous decision of April 1977. The court found that the only remaining question was whether the Board's action was "arbitrary, capricious, unreasonable and unsupported by the evidence," citing *Lippoth v. Zoning Board of Appeals, City of South Portland*, Me., 311 A.2d 552, 557 (1973). Reviewing the record and the findings of the Board, the court upheld the Board in respect to both the commercial and the residential zones.

Your Home filed a timely appeal, claiming that the City of Portland is unconstitutionally excluding mobile homes, and asking this Court to order the City to issue the requested permit.

## II. *State of the Record*

■ The record on appeal requires initial comment. An appeal must be denied if the appellant has not presented an adequate record for review. *Tuttle & Lee Associates v. Deltona Realty Trust*, Me., 414 A.2d 534 (1980); *Meyer v. Meyer*, Me., 414 A.2d 236 (1980); *see also Roberts v. Smith*, Me., 415 A.2d 1089 (1980). The record initially provided to this Court included only the record of action No. 77–1247; by stipulation at oral argument, the parties agreed to expand the record to include the records in Nos. 70–740 and 74–109. Even the expanded record, however, does not include a copy of plaintiff's original application to the Building Inspector. The maps of Your Home's planned development which were included

as plaintiff's exhibits in 70–740 and 74–109 were later withdrawn with permission of the court. Two maps have been submitted by Your Home to this Court, without objection from the City, on the assertion that it is the parties' recollection that these were the plaintiff's exhibits. Aside from these maps, the only other information concerning the plaintiff's proposed use is an incomplete transcript of a public hearing held by the Board in June 1977.

■ In this transcript, Your Home responded to questioning by both the Board and Portland citizens by saying that it was not prepared to answer questions about the specifics of its plan. Instead, it took the position that the only purpose of the hearing was to determine whether mobile homes in general are similar to the uses permitted in the I–2 and the R–3 zones. Your Home presented a land use consultant who testified that generally mobile homes use land in the same way as residences of other kinds. The questioning showed that neither the Board nor the audience was satisfied that this park could be approved as a similar use without specific information on Your Home's plans. The same opinion was expressed by Board members in a transcript of their subsequent meeting. In the end, however, the Board based its decision on its finding that a mobile home park is a commercial enterprise and therefore dissimilar to uses permitted on an R–3 zone.

The hearing transcript and the records and exhibits from 70–740 and 74–109 provide some information, but leave important questions unanswered. The term "mobile home park" embraces a spectrum of possible uses of land. It could include either structures permanently installed on foundations, substantially similar to other residential dwellings, or mobile homes still on wheels, temporarily placed on lots, lacking the permanence and possibly other features of residential dwellings. *See Town of*

---

4. Both parties assert that Your Home's application is divisible as between the R–3 zone and the I–2 zone.

5. We note that in its 1977 decision the Superior Court had not retained jurisdiction. *See Sanborn v. Town of Eliot*, Me., 425 A.2d 629, 631 (1981).

*Windham v. LaPointe*, Me., 308 A.2d 286, 289 (1973). The critical deficiency of the record is that it does not tell us where on the spectrum Your Home intends its park to be. The record tells us virtually nothing about Your Home's plans except that the park will conform to all the necessary statutes and regulations. In other cases involving mobile homes, we have generally had before us specific information on how the home or homes are to be installed, *e. g., id.; Wright v. Michaud*, 160 Me. 164, 200 A.2d 543 (1964). Without such specific information, we cannot order the issuance of a permit, as Your Home requests. Although review of the Board's order is not precluded altogether, it is limited by the lack of specific information.

We take judicial notice of the statutory provisions governing mobile homes in 10 M.R.S.A. §§ 9001–9053 (the Manufactured Housing Act) and 30 M.R.S.A. §§ 4771–4783 (the Industrialized Housing Law), and the provisions governing mobile home parks in 22 M.R.S.A. §§ 2491–2501 and 30 M.R.S.A. §§ 4061–A to 4067. The same definition of mobile home is provided in 22 M.R.S.A. § 2491(9), 30 M.R.S.A. § 4061–A(1), and 30 M.R.S.A. § 4773(8):

> "Mobile home" shall mean a structure, transportable in one or more sections, which is 8 body feet or more in width and is 32 body feet or more in length and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities and includes the plumbing, heating, air conditioning and electrical systems contained therein.

The same definition is also used in 10 M.R.S.A. § 9002(10), except that the words "which is a type of manufactured housing and is" are added after "structure" and before "transportable." Mobile homes are included in the definition of both "manufactured housing" in 10 M.R.S.A. § 9002(7) and "industrialized housing" in 30 M.R.S.A. § 4773(3). In 10 M.R.S.A. § 9002(11), there is also a definition of "modular homes," which differs from that of mobile homes by providing that modular homes are "not constructed on a permanent chassis."

A mobile home park is defined in 22 M.R.S.A. 2491(10) as follows:

> "Mobile home park" means a parcel or adjoining parcels of land, under single ownership which has been planned and improved for the placement of 2 or more mobile homes per parcel.

In 30 M.R.S.A. § 4061–A(2) the definition reads:

> "Mobile home park" means any parcel of land under single or common ownership or control which contains, or is designed, laid out or adapted to accommodate 2 or more mobile homes. Nothing herein shall be construed to apply to premises used solely for storage or display of mobile homes.

Section 4061–A(3) defines "tenant" as

> a mobile home owner who rents a parcel of land in a mobile home park.

Mobile home parks must be licensed by the Department of Human Services, pursuant to 22 M.R.S.A. § 2492; 22 M.R.S.A. § 2496 gives that Department authority "to make and enforce all necessary rules and regulations for the administration of this chapter." Municipal inspections, regulation and standard setting are provided for by 22 M.R.S.A. § 2499.

Mobile home park owners and operators are prohibited by 30 M.R.S.A. § 4061–B from requiring that tenants purchase equipment from them, but the same section allows the operator to "determine by rule or regulation the style or quality of such equipment." Section 4066–B(4) gives the owner a right to "promulgate reasonable rules governing the conduct of his tenants, if ... reasonably related to preserving the order and peace of other tenants and the mobile home park."

The Industrialized Housing Law, 30 M.R.S.A. §§ 4771–4783, places the manufacture and sale of mobile homes under the regulatory authority of the Maine State Housing Authority. The Manufactured Housing Act, 10 M.R.S.A. §§ 9001–9053, creates the Manufactured Housing Board in the Department of Business Regulation and gives

it regulatory authority over the construction and installation of new manufactured housing, 10 M.R.S.A. §§ 9003–9006. Your Home has included in the appendix the regulations of the Manufactured Housing Board governing *modular* homes, but whether this means that Your Home plans to have "modular," as opposed to "mobile," homes remains a mystery. The regulations appear to apply only to structures without a permanent chassis.

The statutory definition of mobile homes excludes some trailers, campers, recreational vehicles, and "modular homes" that could conceivably make use of the facility proposed by Your Home. We do not know whether Your Home intends to admit only structures within the statutory definition of mobile homes, but even if we were to assume that it does, we do not know whether those mobile homes would be permanently affixed to foundations, or tied down, skirted, or left on wheels.

 Review of a zoning board's decision is confined to the application which was presented to the Board. *Moyer v. Board of Zoning Appeals*, Me., 233 A.2d 311, 316 (1967). Without Your Home's application and plans, a review of the Board's decision on the facts is impossible. We can, however, review the Board's decision to determine whether errors of law appear on its face.

Whether a proposed use falls within a given categorization contained in zoning regulations is a question of law, on which the zoning board's determination as well as that of the single Justice is subject to review.

*Moyer v. Board of Zoning Appeals*, Me., 233 A.2d 311, 318 (1967). *See also Natale v. Kennebunkport Board of Zoning Appeals*, Me., 363 A.2d 1372 (1976). The initial issue in review of a decision of a Zoning Board of Appeals is whether the decision is correct under the ordinance and the applicable statutes. If the decision contravenes the ordinance on its face, it may be vacated even in the absence of an adequate factual record.

Even in review of the ordinance, the record provided here is of little help. The Appendix on appeal to the Law Court[6] contains a copy of the Portland Zoning Ordinance, which is improperly collated and which lacks any authentication or evidence that it is the version of the ordinance then in effect. Indeed, the parties inform us that the ordinance had been amended. (See Part I at 1252–1254.) There is no evidence that the copy provided was the one admitted as an exhibit. The Appendix is also lacking Your Home's application for a permit, as mentioned above, or any indication that Your Home's plans or maps or any other exhibits had been transmitted with this appeal.

Although this appendix met the minimum requirements of M.R.Civ.P. 74C(a), it cannot be considered a properly completed appendix for this Court's use. No court should be expected to spend its time sorting out the pagination of an improperly collated document, locating missing exhibits, or otherwise performing tasks which are properly the responsibility of counsel.

While we do not find it necessary to dismiss this appeal, we do find it appropriate to draw the attention of counsel to the recent decision of the Third Circuit, in *Kushner v. Winterthur Swiss Insurance Co.*, 620 F.2d 404 (3d Cir. 1980), in which the court dismissed an appeal because the appellant's combined brief and appendix were incomplete and failed to satisfy the court's rules. The court's opinion is worth quoting:

We now decide not to expend any more valuable judicial time performing the work of errant counsel, a practice that worked a tremendous disservice to the bulk of the litigants who appear before us represented by diligent counsel who do observe our rules.

620 F.2d at 407; *see also Warchalowski v. Brown*, Me., 417 A.2d 425, 430 (1980).

Your Home and the amicus curiae have strenuously urged this Court to rule that

---

**6.** The Appendix differs from the stipulation submitted to the Superior Court. We see no proper reason why it should have been altered.

the City of Portland is unconstitutionally excluding mobile homes. Although we decide this case on other grounds, we take this opportunity to reiterate, once again, that it is undesirable for the Law Court to decide

> constitutional issues prematurely or otherwise than in the context of a fully developed factual situation that demands a constitutional decision.

*Matheson v. The Bangor Publishing Co.*, Me., 414 A.2d 1203, 1205 (1980). It is not the function of this Court to propound advisory rulings, unrelated to specific facts. Indeed, we avoid expressing opinions on constitutional law whenever a non-constitutional resolution of the issues renders a constitutional ruling unnecessary.

We intimate no opinion as to whether the parties share equally in the blame for these deficiencies. Under M.R.Civ.P. 74C(a), it is initially the responsibility of the appellant to prepare and file an appendix, but the appellee has a responsibility for adding whatever is necessary to support its position, under M.R.Civ.P. 74C(b). It is generally the burden of the party seeking review to provide an adequate record, *e. g., Meyer v. Meyer*, Me., 414 A.2d 236 (1980), but the Board also bore a burden under section 605.7 of the Portland Zoning Ordinance, which requires that

> [e]very decision of the Board shall include findings of the fact [*sic*], shall refer to the evidence in the record and the exhibits, plans or specifications upon which such decision is based. . . .

Section 605.7 of the ordinance tracks in part the language of 1 M.R.S.A. § 407, which requires that

> [e]very agency shall make a written record of every decision involving . . . an application . . . or any other type of permit. . . . [and] shall . . . make finding of the fact, in writing, sufficient to appraise

the applicant and any interested member of the public of the basis for the decision. We have said:

> This law does not purport to make any of the informational data received by the agency in the course of processing any application the written record for purposes of judicial review.

*In re Belgrade Shores, Inc.*, Me., 359 A.2d 59, 64 (1976). However, while this statute does not require the Board to include a complete factual record with its decision, it does require a statement of facts sufficient to show a rational basis for the decision. In this case, the Board's order does not completely satisfy this requirement.[7]

### III. *The Industrial-2 Zone*

■ In respect to the portion of land in the Industrial-2 Zone, the Board's ruling relied on the fact that "dwelling units other than accessory uses are prohibited in the I–2 zone," as provided by sections 602.12(A) and 602.13(A)(32) of the ordinance.[8] Given this express exclusion, it was not necessary for the Board to consider whether mobile homes should be allowed as a "similar use," § 602.24(B), for that provision dealt only with uses neither expressly included nor expressly excluded. The Superior Court erred in its 1977 decision in respect to the Industrial-2 Zone; it should not have been necessary for the Board to reconsider its ruling on the Industrial Zone. In any case, it is clear that the Board's action in denying the permit for the Industrial Zone portion of Your Home's land was proper under the ordinance.

■ Regardless of whether the constitutional issues were "foreclosed" by the April 1977 decision, Your Home has not presented any separate argument addressed to the constitutionality of the I–2 Industrial Zone restrictions. Instead, Your Home has consistently attacked the ordinance in its en-

---

7. The Board bore this burden in spite of the fact that its decision was limited to the issues presented on remand. The Board's earlier decisions are not in the record before us, so we cannot say what facts, if any, were set forth in those decisions.

8. Section 602.12(A) prohibits in an I–2 Industrial Zone any use which is prohibited in an I–3 Industrial Zone. Section 602.13(A)(32) prohibits in an I–3 Industrial Zone "any dwelling" with certain exceptions not here pertinent.

tirety for failure to provide expressly for mobile home parks in any zone. The exclusion of dwelling places in an Industrial Zone bears an obvious relationship to legitimate public purposes, so we have no difficulty in finding this portion of the ordinance constitutional. Your Home has produced no evidence to show that the exclusion of dwellings from the industrial zone is irrational or discriminatory as applied in this case. We conclude therefore that the denial of the permit in the Industrial Zone was proper.

### IV. *The Residential-3 Zone*

The Board's ruling on the Residential Zone reads:

> A mobile home park is a commercial enterprise. . . . The park owner would control the service available in the park and retains control of the land for which rent is charged.

The Superior Court upheld this ruling, saying that "large commercial activity is not a use for which an R–3 Residential Zone is designed." Neither the Court's decision nor the Board's sets forth any facts to support this conclusion. Nor did the decisions refer to any provision of the ordinance which would show that the City had legislatively concluded that the commercial aspects of a mobile home park made it impermissible in a residential zone.

 Significantly, the Board did not rule that individual mobile homes are not permitted in an R–3 zone. We find the Board could not have so ruled under this ordinance. Section 602.27 of the ordinance defines "dwelling" as:

> A building or portion thereof used exclusively for residential occupancy, including one-family, two-family and multiple dwellings, but not including hotels, lodging houses, boarding houses, or tourist homes.

The uses permitted in an R–3 zone include a "one family dwelling." A "one-family dwelling" is defined as:

> A detached building used exclusively for occupancy by one family.

The ordinance provides no basis for excluding mobile homes from this definition. No separate definition of "building" is provided. It is not necessary for us to decide here whether anything that might be used as a "mobile home" would become a "building" merely by being parked on a lot. It is sufficient to hold that a mobile home used as a residence *could* come within this definition of a dwelling, particularly if installed on a foundation. In fact, the Board itself referred to mobile homes as "dwelling units" in dealing with the industrial zone. As we said in *Moyer v. Board of Zoning Appeals* :

> The name by which a building or use is designated or called has some evidentiary value but is not of controlling importance in determining whether such a building or use is within one of the permitted institutions or types of operations under the zoning ordinance involved. It is rather the nature of the activities or the character of the business or service to be carried on which will settle the construction to be given to the legislative language.

233 A.2d at 318. *See also Wickenden v. Luboshutz*, Me., 401 A.2d 995 (1979) (studio equipped only for summer use and lacking a kitchen, but with its own water, septic system and refrigeration, was a dwelling within the meaning of a zoning ordinance); *Robinson v. Board of Appeals of the Town of Kennebunk*, Me., 356 A.2d 196, 198 (1976) ("trailers and tents designed for transient use are not 'dwellings' within the meaning of the [Kennebunk] Ordinance"; mobile homes designed for long-term occupancy are specifically included in the ordinance's definition of "building"); *Town of Windham v. LaPointe*, Me., 308 A.2d 286, 291 (1973) ("A house trailer, well constructed and equipped, connected with the public water, sewer and electric systems, cannot be deemed, per se, detrimental to the health, morals, comfort, safety, convenience and welfare of the people . . . without regard to the nature and use of the surrounding properties").

Other jurisdictions are split on whether a mobile home may be considered a single-

family dwelling for zoning purposes, the result often depending upon variations in legislative definitions. The Rhode Island Supreme Court has found that a mobile home set on concrete blocks is a one-family residence within the meaning of an ordinance quite similar to the one here. *Lescault v. Zoning Board of Review of Cumberland*, 91 R.I. 277, 162 A.2d 807 (1960). A Massachusetts case held that a trailer on wheels did not come within the definition of "one-family detached house." *Marblehead v. Gilbert*, 334 Mass. 602, 137 N.E.2d 921 (1956). Massachusetts later held that a zoning provision specifically excluding mobile homes excluded a mobile home even without wheels and fixed on a foundation. *Town of Manchester v. Phillips*, 343 Mass. 591, 180 N.E.2d 333 (1962); *Town of Brewster v. Sherman*, 343 Mass. 598, 180 N.E.2d 338 (1962). In *Brownfield Subdivision, Inc. v. McKee*, 61 Ill.2d 168, 334 N.E.2d 131 (1975), the Supreme Court of Illinois ruled that a mobile home, even though installed on a foundation, is precluded by a covenant prohibiting mobile homes. *Phillips* and *McKee* both contain strong language to the effect that a mobile home does not lose its character as a mobile home after it loses its mobility, but both those cases dealt with express prohibitions of mobile homes. The issue in the present case is different. We note, moreover, that covenants or ordinances against trailers were held not to prohibit mobile homes on foundations in the following cases: *Heath v. Parker*, 93 N.M. 680, 604 P.2d 818 (1980); *Hussey v. Ray*, 462 S.W.2d 45 (Tex.Civ.App.1970); and *Manley v. Draper*, 44 Misc.2d 613, 254 N.Y.S.2d 739 (1963).

In *New Orleans v. Louviere*, 52 So.2d 751 (La.App.1951), the court upheld the exclusion of a trailer park (involving trailers on wheels attached to automobiles) from a residential zone in New Orleans on the ground that it was a commercial activity and also said that a trailer is not a one- or two-family dwelling. The court later rejected the latter conclusion as *obiter dictum* and held that a mobile home "attached to the soil" could be a one-family dwelling, permissible in a New Orleans residential zone, even

though a mobile home *park* was excluded from the same zone as a commercial activity. *Rundell v. May*, 258 So.2d 90 (La.App. 1972), *writ denied*, 261 La. 468, 259 So.2d 916 (1972). *In re Willey*, 120 Vt. 359, 140 A.2d 11 (1958), upheld a zoning board's finding that a trailer on a foundation is a single-family house, on the ground that zoning ordinances are in derogation of common law property rights and should be construed in favor of the owner unless the intended use is clearly and expressly prohibited. *See also City of Astoria v. Nothwang*, 221 Or. 452, 351 P.2d 688 (1960); *Anstine v. Zoning Board of York Township*, 411 Pa. 33, 190 A.2d 712 (1963); *cf. Warren v. Town of Gorham*, Me., 431 A.2d 624 (1981) (involving an ordinance which distinguished single-unit modular homes); *Wright v. Michaud*, 160 Me. 164, 200 A.2d 543 (1964) (involving an ordinance specifically excluding mobile homes). See also cases collected in Annot., 96 A.L.R.2d 232, § 11 at 254–258 (1964), and Later Case Service.

In the present case, we are deciding not what an ordinance *may* do, but what this ordinance in fact *does* do, *i. e.*, whether the Board acted correctly under the ordinance. The ordinance does not contain either any express prohibition of mobile home parks or any definition of "commercial activity" which would support the Board's conclusion that a mobile home park would be an impermissible commercial activity. The ordinance contains no provision prohibiting owners of any other type of dwelling unit from renting, or from providing utilities or other services to their tenants. Even if we assume that a rational basis might exist for including such a prohibition in an ordinance, we are dealing here with a prohibition adopted by the Board. The Board cannot be given authority unfettered by any standards to approve or disapprove the location of mobile home parks. *Town of Windham v. LaPointe*, 308 A.2d at 293. Much less can it simply assume such authority.

The Board may often have to consider how the provisions of the ordinance apply to uses not expressly or clearly covered by the ordinance; as discussed be-

low, this is its inherent interpretative responsibility, conferred by statute (30 M.R.S.A. § 4963), which must be exercised even in the absence of a "similar use" provision such as § 602.24(B). See Part V, *infra.* But its interpretative rulings must be reasonable; they must be expressly based on facts in the record and on the terms of the ordinance, "construed reasonably with regard both to the objects sought to be attained and to the general structure of the ordinance as a whole." *Robinson v. Board of Appeals of the Town of Kennebunk,* 356 A.2d at 198 (quoting *Moyer v. Board of Zoning Appeals,* 233 A.2d at 317). In the present case, neither the factual record nor the ordinance provides any support for the Board's action.

 A municipal zoning ordinance, adopted pursuant to 30 M.R.S.A. §§ 1917 and 4962, regulates land use. The restrictions imposed on the use of property must bear a substantial relation to public health, safety, morals or general welfare. *Barnard v. Zoning Board of Appeals of Town of Yarmouth,* Me., 313 A.2d 741 (1974); *Toulouse v. Board of Zoning Adjustment, City of Waterville,* 147 Me. 387, 87 A.2d 670 (1952). A zoning ordinance is not ordinarily concerned with *title* to property. Whether a residential dwelling is owned or rented by its occupant is irrelevant to the nature of the occupant's use of the land. Your Home may plan to rent mobile homes owned by the company or to rent lots to people who would own the mobile homes placed thereon, the scheme contemplated by 30 M.R.S.A. § 4061–A. The City has not demonstrated that either arrangement would differ, with respect to the legitimate land use concerns expressed in the ordinance, in any significant way from the sale of individual lots with mobile homes or either sale or rental of wood frame houses. In all cases, the land use is residential. Moreover, if there are any rational distinctions to be drawn between different title arrangements for zoning purposes, those distinctions must be drawn by the ordinance, and not by an Appeals Board acting without any basis or standards in the ordinance. The Board did not have, and could not be given, authority to arbitrarily prohibit uses not prohibited by the ordinance. *Town of Windham v. LaPointe; Stucki v. Plavin,* Me., 291 A.2d 508 (1972); *Waterville Hotel Corp. v. Board of Zoning Appeals,* Me., 241 A.2d 50 (1968).

In conclusion, we hold that the Board acted without authority in denying the permit in the Residential Zone. On the existing record, however, we cannot order that a permit issue. We cannot find that Your Home's mobile home park *will* meet all the requirements of the ordinance. We only hold that the park could meet those requirements, and the Board cannot rely on the planned rental relationships in the park as a basis for denying the permit. If the Board had no more information than a general initial application for a permit to build a "mobile home park," coupled with the building inspector's denial of the permit on the ground that either mobile homes or mobile home parks are not permitted uses, the correct action under the ordinance would have been to reverse the building inspector and order that Your Home be given an opportunity to demonstrate that it will meet all the restrictions that any other builder of single family dwellings would have to meet. We therefore remand to the Superior Court, with an order that it in turn remand this case to the Board, with an order that Your Home be given an opportunity to demonstrate that a mobile home park on the portion of its property in the R–3 zone would meet all applicable regulations and restrictions. We do not decide, for example, on the existing record, whether foundations would be required, because we do not know whether Your Home intends to use foundations, and if so, of what sort. Since Your Home provided no opportunity for administrative review of its detailed proposal, we do not undertake such a review on appeal. We find nothing in the present record, however, which would lead us to believe that mobile homes could not meet such requirements as legitimately may be imposed under existing ordinances and statutes. We hold that those mobile homes which do meet such requirements are a permissible use within Portland's R–3 zone,

and would be permissible in a park as well as individually. The Board's action on remand must be consistent with this holding.

### V. *Application of the Amended Ordinance on Remand*

The remaining problem is the effect of the repeal of § 602.24(B). The parties did not raise this issue before the Superior Court in either this proceeding or the previous one, so it is not necessary for us to consider what effect the repeal might have had on any of the earlier proceedings. However, we do have to discuss the effect of the repeal on remand.

In *Thomas v. Zoning Board of Appeals of the City of Bangor*, Me., 381 A.2d 643, 647 (1978), we held that a property owner does not acquire vested rights in an existing zoning ordinance upon filing of an application, absent any equitable considerations such as a "substantial good faith change" in reliance on the existing ordinance, bad faith delays by the municipality, or "discriminatory enactment of a zoning ordinance for the purpose of preventing a legal use by the applicant." We express no opinion as to whether any such equitable consideration would apply here. In the absence of any equitable considerations, the ordinance as amended would apply on remand.

We conclude, however, that the change in the ordinance will not make any difference. The new version of section 602.24(A) is a general jurisdictional provision. The new version of section 602.24(B) reads as follows:

*Appeals.*

1. *Authority.* The Board of Appeals shall hear and decide appeals from and review orders, decisions, determinations or interpretations or the failure to act of the Building and Inspection Services Department.

This provision tracks the statutory provision in 30 M.R.S.A. § 4963, which provides in subsection (2):

2. *Powers.* In deciding any appeal:

A. The board may interpret the provisions of the ordinance which are called into question;

B. The board may approve the issuance of a special exception permit or conditional use permit in strict compliance with the ordinance; and provided the municipality has not authorized the planning board, agency or office to issue said permits;

C. The board may grant a variance in strict compliance with subsection 3.

The power granted the Board, by both the amended ordinance and the statute, to interpret the ordinance on appeal from a ruling by the Building Inspector is sufficient to enable the Board to interpret the definition of "dwelling"; moreover, under the statute it would not have been possible for the amended ordinance to remove that power. The "similar use" formula of the old ordinance was not necessary to provide the Board with the basic power of interpreting the ordinance. Even without the "similar use" provision, the Board had the power and the responsibility to interpret the ordinance in a rational, nondiscriminatory manner. Any use which is similar to and no more objectionable than the uses expressly permitted in a zone, and concerning which there is no explicit provision in the ordinance, may not be arbitrarily and irrationally excluded from that zone, nor excluded on some ground that has no foundation in the ordinance. This standard, together with our holdings in this decision, is sufficient to govern the Board on remand.

We vacate the judgment of the Superior Court upholding the Board's denial, on the ground that a mobile home park is a commercial activity, of the permit in the Residential Zone. We remand to the Superior Court with instruction to vacate the denial of a permit in the Residential Zone and to order that Your Home be given an opportunity to demonstrate that it can comply with the ordinance as construed in this opinion.

In respect to the denial of the permit in the Industrial Zone, we affirm the judgment of the Superior Court.

The entry is:

Judgment vacated in part and affirmed in part.

Remanded to the Superior Court with instruction to set aside the denial of a permit in the Residential Zone and to direct that Your Home, Inc. be given further hearing.

All concurring.