457 So.2d 343 (1984)
Albert S. KINCHEN, Marie A. Knotts, Bobby Ray Alston, and Briarwood Home Owners Association, Appellants,
v.
Kenneth C. LAYTON and Veldron R. Layton, Appellees.
No. 54369.
Supreme Court of Mississippi.
September 26, 1984.
*344 Larry L. Lenoir, Gulfport, for appellant.
Charles K. Pringle, Biloxi, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
What are "temporary structures" within the context of use restrictions found in protective covenants on the Briarwood West-First Addition in Harrison County, Mississippi, is the question at the core of this civil dispute.
Kenneth C. Layton and Veldron R. Layton, Defendants below and Appellees here, own various lots within the subdivision. In June, 1982, Kenneth C. Layton ("Layton") installed upon Lot 10 a manufactured structure clearly intended for use as a home. He states that he intends that the home be permanent.
Albert S. Kinchen, Marie A. Knotts and Bobby Ray Alston, Plaintiffs below and Appellants here, are neighboring property owners who argue that the manufactured home is a "temporary structure" and as such may not be placed upon the lot consistent with the protective covenants.
After trial on the merits, the Chancery Court found
"that the structure now situated on Lot 10, Briarwood West-First Addition Subdivision is neither a trailor, mobile home, nor temporary structure",
and that nothing in the protective covenants prohibited the placement of the structure on the lot in question. Accordingly, on August 13, 1982, the Chancery Court entered its final decree dismissing the complaint of Kinchen, et al, with prejudice.
Suggesting error in the resolution of the underlying question, Kinchen, et al, appeal. Because we find that the findings of the Chancellor were not only supported by substantial evidence but were eminently correct, we affirm.

II.
At all times relevant hereto, the protective covenants for the Briarwood West-First Addition contained the following provision:

*345 "6. TEMPORARY STRUCTURES: No structure of a temporary character, basement, tent, shack, garage, or other outbuilding shall be placed upon or used on any lot at any time for purpose either temporarily or permanently."
The controversial structure placed upon Lot 10 in June of 1982 was manufactured in Georgia. The evidence reflects that it was transported to Harrison County in two sections. After removal of the wheels, running gears and tow bars, the sections were placed on previously prepared masonry peers. The two sections were then connected, and certain additions and refinements were made by Layton.
The structure contains 1,204 square feet of living area which is centrally heated and air conditioned. It has been refined by Layton by the addition of a dutch gable and gutter on the roof, a front porch, a covered walkway along the rear, and a carport on one end. In addition, a concrete driveway and sidewalk to the front door have been installed.
There was no issue below as to whether the structure met the applicable zoning, building, plumbing and electrical codes, nor as to whether all necessary permits had been secured by Layton before the structure was installed. Further, there is no suggestion that the structure violates any other provision of the protective covenants applicable to Briarwood West-First Addition.
Kinchen, Knotts and Alston own homes in the vicinity of Lot 10. They object strenuously to the appearance of the structure in question. They suggest that it has the appearance of a trailer or mobile home. That the structure was transported to the site where it was installed on wheels is not the crux of Appellants' objections. They acknowledge that the same structure could have been built, stick-by-stick, on the site and it would still be offensive to them.

III.
Unless restricted by law  either the publicly made or the privately created variety  the Laytons may use their property as they see fit, for it is the past and present public policy of this state that
"ordinarily that miniscule portion of this planet's soil as a person owns may be put to such use as that person desires."

Andrews v. Lake Serene Property Owners Association, Inc., 434 So.2d 1328, 1331 (Miss. 1983).
The law of this and every other state that we know anything about favors free and unobstructed use of real property. Manley v. Draper, 44 Misc.2d 613, 254 N.Y.S.2d 739, 742 (1963); Hussey v. Ray, 462 S.W.2d 45, 48 (Tex.Civ.App. 1970).
A logical outgrowth of this public policy has been the established rule of construction that restrictive or protective covenants, where ambiguous, are construed strongly against the person seeking enforcement. In Kemp v. Lake Serene Property Owners Association, Inc., 256 So.2d 924 (Miss. 1971), this Court stated:
"Generally courts do not look with favor on restrictive covenants. Such covenants are subject more or less to a strict construction and in the case of ambiguity, construction is most strongly against the person seeking the restriction and in favor of the person being restricted." 256 So.2d at 926.

Andrews v. Lake Serene Property Owners Association, Inc., 434 So.2d 1328, 1331 (Miss. 1983).
A corollary rule is that clear wording of protective covenants will not be disregarded merely because a use is restricted. So long as prohibition is expressed in unambiguous language, enforcement is available in the courts of this state to persons of proper standing. Andrews v. Lake Serene Property Owners Association, Inc., 434 So.2d 1328, 1331 (Miss. 1983).
It is within the actual and judicial knowledge of this Court that protective or restrictive covenants banning the use of residential subdivision property for certain trailers, mobile homes or temporary structures do exist. Such covenants may be employed and enforced, so long as clear *346 language is used. Over twenty years ago, this Court correctly stated in Schaeffer v. Gatling, 243 Miss. 155, 159, 137 So.2d 819, 820 (1962).
"If the original owner of the subdivision had desired to prohibit the use of house trailers as residences, this could easily have been accomplished by designating house trailers as prohibited use, or by restricting architectural design, by placing a minimum on the floor space for a residence, or by prohibiting temporary residences." 243 Miss. at 159, 137 So.2d at 820.
Earlier in the same opinion, this Court had said:
"Covenants [restrictive] of this kind should be fairly and reasonably construed and the language used will be read in the ordinary sense [citation omitted]. The entire instrument should be considered in ascertaining its meaning, but the restrictions should not be extended by strained construction, especially when, as in this case, the restrictive covenants expressly permit the use being made of the land."

Schaeffer v. Gatling, 243 Miss. 155, 159, 137 So.2d 819, 820 (1962); see Andrews v. Lake Serene Property Owners Association, Inc., 434 So.2d 1328, 1331-32 (Miss. 1983) (intent must be clear, citing Schaeffer); Kemp v. Lake Serene Property Owners Association, Inc., 256 So.2d 924, 926 (Miss. 1972) (such covenants strictly construed against persons seeking restriction, citing Schaeffer); Wiener v. Pierce, 203 So.2d 598, 603 (Miss. 1967) (implication must be plain and unmistakeable, citing Schaeffer); Frederic v. Merchants & Marine Bank, 200 Miss. 755, 766, 28 So.2d 843, 847 (1947) (restrictions should not be left to implication but should be clearly defined); see also Great Atlantic & Pacific Tea Co. v. Lackey, 397 So.2d 1100, 1101-03 (Miss. 1981) (no implied covenant will be inferred); Delta Wild Life & Forrestry, Inc. v. Bear Kelso Plantation, Inc., 281 So.2d 683, 686-87 (Miss. 1973) (restrictions should not be left to implication).
The rules of construction well in mind, we turn to the heart of this case.

IV.
All agree that we have no case which concerns the question whether a manufactured dwelling transported to the site is a "trailer", "mobile home", or "temporary structure" within the meaning of protective or restrictive covenants impressed upon the land. In that sense, this is a case of first impression.
The litigants have called to our attention numerous cases litigated and decided in other states. It does indeed appear, as the Laytons argue, that the trend of authority in the last twenty years is toward a recognition of the increasingly important role manufactured homes have come to play in providing housing for the citizens of this country. Size, design and appearance have been greatly improved over the trailers and mobile homes of the not-too-distant past.
Cases reflecting this discernible trend include: North Cherokee Village Membership v. Murphy, 71 Mich. App. 592, 248 N.W.2d 629 (1976); Heath v. Parker, 93 N.M. 680, 604 P.2d 818 (1980); Manley v. Draper, 44 Misc.2d 613, 254 N.Y.S.2d 739 (N.Y. 1963); Hussey v. Ray, 462 S.W.2d 45 (Tex.Civ.App. 1970); Brasher v. Grover, 551 S.W.2d 302 (Mo. Ct. App. 1977); Crawford v. Boyd, 453 S.W.2d 232 (Tex.Civ.App. 1970); Yeager v. Cassidy, 20 Ohio Misc. 251, 253 N.E.2d 320 (1969); Douglas Township v. Badman, 206 Pa.Super. 390, 213 A.2d 88 (1965); and Morin v. Zoning Board, Town of Lincoln, 102 R.I. 457, 232 A.2d 393 (1967); contra Timmerman v. Gabriel, 155 Mont. 294, 470 P.2d 528 (1970); Brownfield Subdivision, Inc. v. McKee, 61 Ill.2d 168, 334 N.E.2d 131 (1975); McBride v. Behrman, 28 Ohio Misc. 47, 272 N.E.2d 181 (1971).
A review of the above cases has been useful, as has our consideration of the arguments by the parties, particularly the Laytons, regarding the evolving credibility of the manufactured home in our society. *347 In the end, however, these matters little inform today's decision, for under our law properly drafted protective covenants may ban from property to which they are applicable the most modern, most aesthetically pleasing "manufactured home" ever built. On the other hand, the shabbiest, most dilapidated mobile home may be placed upon property where that use has not been prohibited. Our question then is whether the use to which the Laytons have put Lot 10 of the Briarwood West-First Addition is one prohibited by the applicable covenants when those covenants are properly construed.
Looking at the language of the covenant involved, we find it clear that the structure in question is not a "basement, tent, shack, garage or other outbuilding". We focus then upon whether the structure is of a "temporary character". The phrase "temporary character" is not defined in the covenants. It would seem to import a structure which by reference to nature and design was not likely to remain where it was placed for any substantial period of time.
The problem we confront is, how does one determine the "temporary character" vel non of a structure? We can easily determine its height, its floor space, its type of construction or even within wide latitude its aesthetic appearance. "Temporary character", however, is a quality which arguably either no structure has, or, in a wider sense, every structure has.
These points lead inescapably to the conclusion that the covenant in issue is ambiguous. As such it must be construed most strongly against the parties seeking to enforce it and to restrict land use. Those parties here are Kinchen, Knotts, Alston and the Briarwood Homeowners Association.
Under the circumstances, the structure as it has been described to us in the record seems clearly suitable as a home of some permanence. Stick-by-stick built structures of the same basic design and functional utility would not be prohibited under these covenants. The fact that this structure was in large part put together in another state and transported to Harrison County, Mississippi would not seem to deprive it of its trait as of "permanent character". Brasher v. Grove, 551 S.W.2d 302, 306 (Mo. Ct. App. 1977); Heath v. Parker, 93 N.M. 680, 682, 604 P.2d 818, 820 (1980).
In summary, when strictly construed against the parties seeking enforcement, these covenants simply are not sufficient to proscribe the placement and use of the structure in question on Lot 10 of the Briarwood West-First Addition subdivision of Harrison County, Mississippi.
No resort to notions of clear error or manifest wrong are necessary to affirm the determination of the trial judge here, for he was eminently correct when he determined that the structure in question was "neither a trailer, mobile home, nor temporary structure". This, of course, was tantamount to a holding that the structure was not "of a temporary character". Assignments of Error Nos. 1 and 2 are rejected.

V.
Appellants Kinchen, et al, finally charge that the Chancery Court "erred in finding that the structure does not constitute a nuisance". We have carefully reviewed the evidence and considered the argument of counsel in support of this point. We find no error.
AFFIRMED.
WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and SULLIVAN, JJ., concur.
PATTERSON, C.J., not participating.