294 S.E.2d 267

**Jerry BILLINGS and Diana Billings, his wife, et al.**

**v.**

**Lourine M. SHREWSBURY, Earl Trigg, and Dorothy Trigg, his wife.**

**No. 15213.**

Supreme Court of Appeals of West Virginia.

July 15, 1982.

---

4. *See* Annot., Libel and slander: actionability of charge of being a "slut," "bitch," or "son of a bitch", 13 A.L.R.3d 1286 (1967).

William J. Akers, Princeton, for appellants.

Frazier & Schumacher and John R. Frazier, Princeton now Schumacher & Schumacher, Princeton, for appellees.

NEELY, Justice:

The appellants, Lourine Shrewsbury and Earl and Dorothy Trigg, appeal from a final judgment of the Circuit Court of Mercer County, holding that they violated a restrictive covenant prohibiting the placing of mobile homes in a residential subdivision. The appellants contend on appeal that their homes are not mobile homes within the meaning of the restrictive covenant. We agree with regard to the Shrewsbury home, but disagree with regard to the Trigg home.

In 1968, Mr. and Mrs. Ralph Kiblinger began selling lots on property now known as Green Acres Subdivision. In 1976, they adopted a covenant restricting the types of dwellings that could be placed on all lots in Green Acres thereafter sold. The relevant part of this covenant provides as follows: "No buildings of temporary nature, nor trailer, nor mobile home, nor tent, except a child's tent, shall be erected or placed on the property...."

In 1979, Mrs. Shrewsbury approached the Kiblingers about purchasing a lot in Green Acres and placing an R-Anell sectional home on it. Aware of the restrictive covenant, Mrs. Shrewsbury requested that Mr. Kiblinger inspect the structure she proposed to place on the lot, which he did, indicating that it would not violate the covenant. The appellant then purchased the home and had it installed in the subdivision. Several months later the Triggs also purchased a lot in the subdivision and placed a Lancaster home upon it.

Shortly thereafter, the appellees, homeowners in the subdivision, filed this suit

against the subdivision owners claiming that the appellants' dwellings were mobile homes and praying for enforcement of the covenant. The trial judge, hearing this matter without a jury, held that the appellants' dwellings were mobile homes and, therefore, violated the restrictive covenant. He entered judgment for the appellees, ordered the appellants' homes removed, and prohibited any other such homes from being placed in the subdivision. The appellants contend here that their dwellings are not mobile homes and ask that the order be vacated.

*W. Va. Code*, 21–9–2(4) [1974], in part, defines a mobile home as follows:

"Mobile home" means a movable or portable unit, designed and constructed to be towed on its own chassis (comprised of frame and wheels), and designed to be connected to utilities for year-round occupancy. The term includes...units composed of two or more separately towable components designed to be joined into one integral unit capable of being separated again into the components for repeated towing.

*See also Kyritsis v. Fenny*, 66 Misc.2d 329, 320 N.Y.S.2d 702 (1971).

The critical inquiry in this case is whether these homes are movable or portable. Obviously both structures were movable in the first instance since they were built in a factory and later moved to their current location. This, however, does not determine whether a home is movable. The test is whether once a factory-built home is set-up, it may be moved again. In this case, since both of these structures are composed of separate components, the question is whether the components were designed to be separated again into individual components for repeated movement. If so, we must find them to be mobile homes within the definition contained in 21–9–2(4) [1974].

▪ The Shrewsbury home was clearly not designed to undergo repeated moves. A manufacturer's representative testified in the lower court that the R-Anell sectional home must be moored to a permanent foundation just like a conventional stick-built home because of its substantial weight. Failure to support the home with this foundation invalidates the warranty. Further testimony indicated that once the sectional home is tied into the required foundation, it can be moved only as a stick-built home, an effort that costs some $4,000.

Further evidence that the Shrewsbury home is not designed for repeated moves is demonstrated by the way in which it is constructed. The center cap shingles, ventilation and heating systems and portions of the siding were not added until the major prefabricated sectional components had been joined together. Furthermore, the Shrewsbury residence is constructed very much like a conventional stick-built home. Its walls are built of two-by-fours set on 16-inch centers. The roof trusses are built with two-by-twos which are also set on 16-inch centers and the outside walls are covered with lap siding. We also note that the Shrewsbury home is aesthetically acceptable. Photographs admitted into evidence show that this home had the appearance of a conventional, single-family dwelling and compared favorably to other homes in the subdivision. *Accord, Heath v. Parker*, 93 N.M. 680, 604 P.2d 818 (1980).

▪ The Trigg home, on the other hand, falls within the legislative definition of a mobile home. Like the Shrewsbury house, this structure originally consisted of two separately towable units that were designed to be joined into one unit. The difference, however, is that this structure was designed to be separated again for repeated moves. Testimony given below indicates that the two Trigg units are designed to be unbolted from one another so that they can be moved separately. Further testimony indicates that this structure, commonly known as a "double wide" trailer, was designed so that it need not rest upon a permanent foundation and can be adequately supported by blocks set on any solid surface.

The Trigg unit, however, rests upon a permanent foundation and several witnesses testified that it can be moved only in one piece as a stick-built home. The Triggs

contend that this improvement renders the structure immobile and prevents it from being within the definition of a mobile home. We disagree. Mooring this structure to a cement block foundation does not change the essential nature of its construction. *Brownfield Subdivision, Inc. v. McKee,* 19 Ill.App.3d 374, 311 N.E.2d 194 (1974). The Trigg house is a "mobile home."

For the foregoing reasons, the judgment of the Circuit Court of Mercer County holding the Shrewsbury home to be a mobile home and ordering its removal from the Green Acres Subdivision is reversed. The lower court's decision holding the Trigg structure to be a mobile home is affirmed.

Reversed in part and affirmed in part.