1004

David HEAPE, Jr., J. R. Horton and Polly Ann Horton, Clarence M. McMillan, Sr., and Laura McMillan, Clarence M. McMillan, Jr., and Martha McMillan, T. D. Peeples Construction Company, Inc., Respondents v. Charles E. BROXTON, Appellant.

(360 S. E. (2d) 157)

Court of Appeals

*Gary D. Brown,* Ridgeland and *James B. Richardson, Jr.,* of *Richardson & Smith,* Columbia, *for appellant.*

*Joseph K. Qualey,* of *Qualey & Qualey,* Hilton Head Island, *for respondents.*

*Amicus Curiae: D. Cravens Ravenel* and *S. Markey Stubbs,* both of *Belser, Baker, Barwick, Ravenel, Toal & Bender,* Columbia, *for Manufacturedhousing Institute of South Carolina, Inc.*

Submitted June 24, 1987.

Decided Aug. 3, 1987.

GOOLSBY, Judge:

The respondents, David Heape, J. R. Horton, Polly Ann Horton, Clarence McMillan, Sr., Laura McMillan, Clarence M. McMillan, Jr., Martha McMillan, and T. D. Peeples Construction Company, Inc., who are owners of property in the

Deloss Subdivision in Jasper County, brought this action to enjoin the appellant, Charles E. Broxton, from refusing to remove a double-wide mobile home from his lot in the subdivision. The trial court granted the respondents the relief that they sought. Broxton appeals. His appeal raises the issue of whether a double-wide mobile home that is not readily moveable is a "trailer" within the meaning of a restrictive covenant applicable to the subdivision. We affirm.

On November 13, 1980, Broxton, the developer of Deloss Subdivision, recorded restrictive covenants governing the use of all lots within the subdivision. One such covenant provides that "[n]o structure of a temporary character, trailer, tent, shack, garage, or other out building shall be used on any lot at any time as a residence, either tempora[r]ily or permanently."

Broxton purchased a double-wide "manufactured home" from Mid-State Mobile Homes in Orangeburg on July 25, 1985. The manufacturer's statement of origin states that its floor size is 24 feet by 66 feet and that it has 12 wheels. The purchase agreement states that its "hitch size" is 70 feet by 24 feet.

Broxton immediately obtained from the South Carolina Department of Highways and Public Transportation a title certificate reflecting his ownership of the manufactured home. Two weeks later he applied for a building permit, describing the work for which he sought the permit simply as "mobile home." Broxton also applied for and obtained from the Jasper County Assessor a mobile home license.

Mid-State thereafter towed the structure in two sections by truck to Broxton's lot in the subdivision. Each section, equipped with a chassis, a tongue, axles, and wheels, was set on concrete block pillars and concrete footings and joined together. The structure was connected to a water line, an electrical line, and a septic tank and its wheels and tongues were removed. Broxton, who intends to use the structure as his permanent residence, landscaped the lot.

This action followed.

Although Broxton denied in his answer that the structure purchased by him is a "mobile home," it clearly is one under both the former and current statutory definitions of the term "mobile home." S. C. Code of Laws § 31-17-20(a) (1976);[1] *Id.* § 31-17-20(a) (Supp. 1986).[2] In fact, Broxton's own brief recognizes that the structure is "[c]ommonly known as a 'double-wide mobile home.' "

Broxton contends, however, that the restrictive covenant prohibiting "trailers" does not prohibit "mobile homes," especially those that are double-wide and have been permanently affixed to the land.

Where the language used in a restrictive covenant is unambiguous, there is no room for construction and the language must be enforced in accordance with its plain meaning. *Donald E. Baltz, Inc. v. R. V. Chandler & Co.,* 248 S. C. 484, 151 S. E. (2d) 441 (1966).

The term "trailer" is not ambiguous. A "trailer" is a nonautomotive highway vehicle designed to be hauled by a tractor, truck, or automobile. *Jones v. Beiber,* 251 Iowa 969, 103 N. W. (2d) 364 (1960); *City of Astoria v. Nothwang,* 221 Or. 452, 351 P. (2d) 688 (1960). The term clearly includes a "mobile home" within its meaning. *Van Poole v. Messer,* 19 N. C. App. 70, 198 S. E. (2d) 106 (1973), *appeal after remand,* 25 N. C. App. 203, 212 S. E. (2d) 548 (1975). A "mobile home" is a "trailer," as the latter term was commonly understood when Broxton recorded the restrictive covenant in question. *See* WEBSTER'S NEW COLLEGIATE DICTIONARY at 738 (1973) (defining the term "mobile home" to mean "a trailer that is used as a permanent dwelling, is usu[ally] connected to utilities, and is designed without a permanent foundation"); *see also Lassiter v. Bliss,* 559 S. W. (2d) 353, 355 and

---

[1] " 'Mobile home' means a manufactured single family dwelling or an integral part over thirty-five feet in length, or over eight feet in width, so constructed that it may be transported from one site to another, temporarily or permanently affixed to real estate, made up of one or more components, and constructed with the same or similar electrical, plumbing, heating and sanitary facilities as on-site constructed housing."

[2] " 'Manufactured home' or 'mobile home' means a structure transportable in one or more sections, which, in the traveling mode, is eight body feet or more in width, or forty body feet or more in length ... and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities. ..."

357 (Tex. 1977) (wherein the court held that a "mobile home was a trailer within the meaning of [a] restrictive covenant" that provided that "[n]o trailer, basement, tent, shack, garage, barn or other outbuildings erected in this subdivision shall at any time be used as a residence temporarily or permanently nor shall any structure of a temporary character be used as a residence."); *cf.* THE AMERICAN HERITAGE DICTIONARY at 805 (2d ed. 1985) (defining the term "mobile home" to mean "a house trailer that is used as a permanent home and is usually hooked up to utilities."); WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY at 1154 (2d ed. 1983) (*"mobile home;* a large trailer outfitted as a home meant to be parked more or less permanently at a location."). Calling a trailer a "mobile home" does not make it any less a "trailer." *See* Annot., 96 A.L.R. (2d) 232 § 1 at 234 (1964) ("The term 'trailer' is understood in its usual meaning regardless of whether it is referred to or described as house trailer, mobile home, trailer coach, or some such term."). Indeed, the term "mobile home" is simply an advertising euphemism for the term "house trailer." *Timmerman v. Gabriel,* 155 Mont. 294, 470 P. (2d) 528 (1970).

Our opinion that a mobile home is a trailer is not changed by the fact that the wheels and the tongue were removed from each section, that the two sections were joined together and placed on a permanent foundation, and that the connected sections were attached to a septic tank and to water and power lines. The structure is still a trailer, its basic characteristics having not been changed by these actions. *Carter v. Conroy,* 25 Ariz. App. 434, 544 P. (2d) 258 (1976); *McBride v. Behrman,* 28 Ohio Misc. 47, 57 Ohio Op. (2d) 77, 272 N. E. (2d) 181 (1971); *see Brasher v. Grove,* 551 S. W. (2d) 302, note 4 at 305 (Mo. App. 1977) (listing of cases from other jurisdictions that deal with mobile homes and trailers insofar as they are governed by restrictive covenants or zoning regulations and that hold that a structure, originally a trailer, remained a trailer despite the permanent nature of its installation and the removal of wheels, axles, and other portions of the undercarriage). The evidence suggests that it could be separated and moved again. *See Billings v. Shrewsbury,* 294 S. E. (2d) 267 (W. Va. 1982)

(holding that a double-wide mobile trailer's essential character was not changed by mooring the structure to a cement block foundation since the structure was designed to be separated again for repeated moves).

Our opinion is likewise unaffected by the fact that Broxton's mobile home is double-wide and not single-wide. *See Gigowski v. Russell,* 718 S. W. (2d) 16 (Tex. Ct. App. 1986) (wherein the court held that a double-wide manufactured home was a "mobile home" within the meaning of a restrictive covenant prohibiting "any type mobile home."); *Billings v. Shrewsbury, supra.* The statutory definition of the term "mobile home" that was in effect when the restrictive covenant here was adopted in 1980[3] clearly contemplated that a mobile home could be multisectional.

If anyone doubts that Broxton's dwelling is a "mobile home," and thus a "trailer," he or she needs only to glance at the photographs admitted in evidence. They do not show a home that has the appearance of a conventional, single-family dwelling and a home that compares favorably to other dwellings in the neighborhood. *Cf., e.g.,* Defendant's Exhibit No. 7 and Plaintiffs' Nos. 2 and 9 reproduced below. Rather, the photographs show a double-wide trailer, a sight familiar to virtually every South Carolinian.

An obvious objective of a restrictive covenant prohibiting trailers and other structures within a residential subdivision is to regulate the appearance of the subdivision. *Carter v. Conroy, supra.* Such a restrictive covenant forbids trailers from being used as residences within the subdivision because, irrespective of whether trailers are called mobile homes or something else, whether trailers are attached to the land or not, and whether trailers are multi-sectional or not, they, as the photographs prove, still look like trailers.

We therefore hold that the plain language of the restrictive covenant at issue prohibits the use of a double-wide mobile home as a residence on any lot within Deloss Subdivision at any time, irrespective of whether it remains immediately portable. *Timmerman v. Gabriel, supra.*

Affirmed.

Sanders, C. J., and Bell, J., concur.

---

[3] *See* note 1, *supra.*

DEFENDANT'S EXHIBIT #7

PLAINTIFF'S EXHIBIT #2

PLAINTIFF'S EXHIBIT #9