1656

Tom HENRY, Janice Henry, Ray Morrison, Shirley Morrison, Jean Russell, Floyd Hamrick, Dot Hamrick, Robert Sammons, Martha Sammons, Gerald Tippett, Deloris Tippett, John Ferrell, Helen Ferrell, Bryant G. Sanders, Craig Ward, Denise Ward, Gerry Lawrence, Teri Lawrence, Joe Viola, Connie Viola, Tommy McGuirt, John Grovoelier, Melissa Grovoelier, John Bell, Gayle Bell, Wayne Hinson, Carolyn Hinson, Jimmy Bailey, Jean Bailey, Jerry Faulkenberry, A.Z. Williams, Jr., J. Bailey, D. Chuntz, Jerry Scaggs, Jan Scaggs, JoAnn Hishert, and Clarence Hishert, Respondents v. Joel CHAMBRON, Appellant.

(404 S.E. (2d) 518)

Court of Appeals

*Jay Bender,* of *Belser, Baker, Barwick, Ravenel & Bender,* Columbia, *for appellant.*

*James W. Boyd,* Rock Hill, *for respondents.*

Heard Feb. 12, 1991; Decided May 6, 1991.

Rehearing Denied May 29, 1991.

*Per Curiam:*

This is an action seeking to enjoin construction of a modular home. Joel Chambron purchased a lot in the Lost Colony Subdivision and stipulated in his contract that the sale was conditioned upon his being able to put a modular home on the lot. After he began erecting the home, several Lost Colony property owners complained it was in violation of the subdivision's restrictive covenants. They sought and received a restraining order temporarily halting Chambron's work on the home until a hearing on their request for a permanent injunction could be had. The hearing was held two weeks later, after which the circuit court issued a permanent injunction and directed that the home be removed from the premises. Chambron appeals. We reverse.

Chambron appeals on two grounds. First, he contends his home is a modular home and that the circuit court erred in finding it is a "mobile home" as contemplated by the restrictive covenants. Second, he argues the circuit court erred in finding a violation of a restrictive covenant requiring architectural review of proposed home plans, since this alleged violation was not raised in the pleadings and no evidence of the restriction or a violation of that restriction was presented.

## I.

Since this is an action in equity, we may find the facts in accordance with our own view of the evidence. *Yates v. Yates,* 292 S.C. 49, 354 S.E. (2d) 800 (Ct. App. 1987). We first consider whether the evidence is that Chambron's structure is a modular or a mobile home.

A modular home is built off site and is transported to its intended location in as many as twenty sections. The South Carolina Building Code Council must certify it as a modular home. As a prerequisite to certification it must

be inspected and found in compliance with the standard building code applicable to homes built on site. Once the sections are erected at the site, the modular home must be affixed permanently to the property. A mobile home, on the other hand, does not undergo the same certification process as a modular home and it need not comply with the standard building code applicable to site built homes. Furthermore, there is no requirement that a mobile home be permanently affixed to the property.

The evidence overwhelmingly supports the conclusion that Chambron's structure was a modular home: it was certified by the State of South Carolina as a modular home; it was built in compliance with the standard building code applicable to site built homes; Chambron had contracted for the construction of a complete foundation; and representatives of two companies engaged in the sale and manufacture of modular homes testified Chambron's home was a modular not a mobile home.

The Lost Colony property owners offered no evidence that the home is not a modular home. Their sole theory was at trial and is on appeal that the structure has the appearance of a mobile home and that the restrictions were designed to prevent structures with such an appearance in the subdivision. *Cf. Heape v. Broxton*, 293 S.C. 343, 360 S.E. (2d) 157 (Ct. App. 1987).

Chambron emphasizes his home is in an uncompleted state because of the injunction, and that when completed it will have the appearance of a ranch style home. He offered photographs of a completed modular home in support of his contention. Even if his home were to resemble a mobile home, a structure having the mere appearance of a mobile home is not necessarily prohibited by a general restriction against mobile homes. *See Vickery v. Powell*, 267 S.C. 23, 225 S.E. (2d) 856 (1976). Instead, "[a] restriction on the use of property must be created in express terms or by plain and unmistakable implication, and all such restrictions are to be strictly construed, with all doubts resolved in favor of the free use of property." *Hamilton v. CCM, Inc.*, 274 S.C. 152, 157, 263 S.E. (2d) 378, 380 (1980) (citations omitted).

The property owners argue, however, that under the authority of *Midway Properties, Inc. v. Pfister*, 292 S.C. 104, 354 S.E. (2d) 926 (Ct. App. 1987), this rule of strict construction is

inapplicable because it would defeat the purpose of the restriction. The rule in *Midway Properties* is limited to cases in which strict construction would defeat the "plain and obvious" purpose of a negative covenant. The Lost Colony restriction against "mobile homes" does not plainly and obviously prohibit modular homes as well.[1]

First, the theory that the "plain and obvious" purpose of the restriction was to preserve the appearance of the subdivision by prohibiting mobile homes, and thus that modular homes should be prohibited as well, fails because the restriction does *not* prohibit the locating of mobile homes in the subdivision. For that matter, it does not prohibit campers, shacks or tents. Under the restriction relied upon by the property owners, any one of these structures can be located on a Lost Colony lot and used as a workshop, study, playhouse, tool shed, or in any number of other ways, except as a residence. In other words, the covenant restricts only the use, not the presence of these structures. It is not "plain and obvious," therefore, that the restriction was intended to preserve the appearance of the subdivision.

Second, there is no evidence in the record to support the property owners' contention that modular homes are excluded under the restriction, but were not specifically named because modular homes were not contemplated when the covenants were filed. The restriction could have prohibited modular homes by a simple expression of the intent to do so. *Cf. Forest Land Co. v. Black*, 216 S.C. 255, 57 S.E. (2d) 420 (1950) (Court reviewing restrictions on use of boats on lake stated that "[i]f the intention . . . had been to utterly prevent use of any kind of motorboat on [the lake], such intention could have been expressed in very clear and simple terms"). Even if modular homes were not contemplated at the time the restriction was

---

[1] The restrictive covenant on which the property owners rely reads as follows:

(c) No camper, mobile home (single or doublewide), trailer, tent, shack, garage or other outbuilding, whether temporary or permanent, (other than servant's quarters as aforesaid) located on this property shall at any time be used as a residence temporarily or permanently, nor shall any structure of a temporary character be used as a residence, except by special written approval by the developers and owners.

filed, there is no evidence in the record that the property owners were prevented from amending the restriction to include modular homes at a later date.

For these reasons, the circuit court erred in finding Chambron's home to be a mobile home within the restrictive covenant at issue.

## II.

The circuit court also erred in finding Chambron violated a restriction requiring architectural review of proposed home plans. The alleged violation was not raised by the pleadings, nor was it tried by consent.

The complaint alleged Chambron had violated paragraphs (c) and (d) of the restrictive covenants. Paragraph (c) dealt with the prohibition against mobile homes as residences, and paragraph (d) addressed minimum square footage requirements. The alleged violation of paragraph (c) is discussed above, and the circuit judge found no violation of paragraph (d).

The requirement that proposed home plans be submitted for architectural review is found in paragraph (i) of the restrictive covenants. No where in the complaint is Chambron alleged to have violated paragraph (i) or its requirement. The property owners argue, however, that the issue was tried by consent.

In his first exception Chambron contends the circuit judge erred in finding a violation of paragraph (i) of the restrictive covenants because the property owners never alleged he was in violation of that paragraph. The record supports this contention. No testimony raised the issue of Chambron's failure to comply with paragraph (i). The only evidence relative to architectural review concerns who has the authority to approve or disapprove home plans. There is no allegation or evidence in this record that Chambron violated paragraph (i). The circuit judge, therefore, erred in ruling upon the issue, which was not properly before him. *Chandler v. Merrell*, 291 S.C. 227, 353 S.E. (2d) 135 (1987) (judgment must be in accordance with theory upon which case was tried).

Reversed.