THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 

PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Ronald M. Defeo, Respondent,
 v.
 Community Services Associates, Inc.; Sea Pines Company, Inc.; Sea Pines Architectural Review Corporation, Inc.; White Hat Properties, Inc.; and Analytical Business Services, Defendants,
 Of whom White Hat Properties, Inc. is the Appellant.
 
 
 

Appeal from Beaufort County
 Curtis L. Coltrane, Master-in-Equity
Unpublished Opinion No. 2007-UP-357
Heard June 6, 2007  Filed July 24, 2007
AFFIRMED

 
 
 
 Richard D. Bybee, of Mt. Pleasant, for Appellant.
 Dean B. Bell, of Hilton Head Island, for Respondent.
 
 
 

PER CURIAM:  White Hat Properties, Inc. (White Hat) appeals the master-in-equitys order enjoining White Hat from constructing a residence on its lot.  On appeal, White Hat contends the master erred in finding the lot was restricted to golf course use only and excluding extrinsic evidence of the intent behind the alleged restriction.  We affirm.
FACTS
On May 9, 1997, Ronald M. Defeo purchased Lot 22 in the Red Maple Road Subdivision of Sea Pines Plantation on Hilton Head Island.  A golf course surrounds Red Maple Road Subdivision.  The deed by which Defeo obtained Lot 22 incorporates a plat (the Plat) describing the property conveyed.  The Plat, recorded by the developer of Sea Pines Plantation in 1970, shows a parcel of property (the Lot) adjacent to Lot 22 labeled only as RESERVED FOR FUTURE USE FOR GOLF COURSE. 
 
On January 10, 2000, Community Services Associates, Inc., and Sea Pines Company, Inc., the successors-in-interest to the developer of Sea Pines Plantation, transferred the Lot to Sea Pines Land Company.  Sea Pines Land Company subsequently changed its name to White Hat and prepared to build a residence on the Lot.  In response, Defeo filed the present action seeking to enjoin White Hats use of the Lot.[1] 
 
At trial, Francis Guscio, Jr., formerly the land control officer for the developer of Sea Pines Plantation and currently an owner and officer of White Hat, attempted to testify as to why the term reserved was used on the Plat, rather than the term restricted.  The master refused to allow the testimony, holding [f]irsthand knowledge of how that language got put on that plat is what would be required.  White Hat proffered Guscios testimony.  White Hat also proffered the expert testimony of George Richardson Wieters, a real estate attorney and a licensed title insurance agent, as to whether the term RESERVED FOR FUTURE USE FOR GOLF COURSE was ambiguous.  The master excluded the testimony on the ground it constituted a legal conclusion.
 
Subsequently, the master issued an order finding the language on the Plat unambiguously restricted the Lot to golf course use only.  As a result, the master permanently enjoined White Hats proposed residential use of the Lot.  This appeal followed.
STANDARD OF REVIEW
An action to enforce restrictive covenants by injunction is in equity.  Seabrook Island Prop. Owners Assn v. Marshland Trust, Inc., 358 S.C. 655, 661, 596 S.E.2d 380, 383 (Ct. App. 2004).  In equitable actions, the appellate court may review the record and make findings of fact in accordance with its own view of the preponderance of the evidence.  Grosshuesch v. Cramer, 367 S.C. 1, 4, 623 S.E.2d 833, 834 (2005).  However, the appellate court is not required to ignore the findings of the master, because he was in a better position to evaluate the credibility of the witnesses.  Siau v. Kassel, 369 S.C. 631, 638, 632 S.E.2d 888, 892 (Ct. App. 2006).
A decision whether to grant or deny an injunction is ordinarily left to the sound discretion of the trial court.  County of Richland v. Simpkins, 348 S.C. 664, 668, 560 S.E.2d 902, 904 (Ct. App. 2002).  An abuse of discretion occurs when there is an error of law or a factual conclusion which is without evidentiary support. Lee v. Suess, 318 S.C. 283, 285, 457 S.E.2d 344, 345 (1995).
DISCUSSION
I.  The Plat
White Hat contends the master erred in finding the Plat unambiguously restricted use of the Lot to golf course purposes only.[2]  We disagree.
Restrictive covenants are contractual in nature.  Seabrook Island Prop. Owners Assn v. Berger, 365 S.C. 234, 239, 616 S.E.2d 431, 434 (Ct. App. 2005).  The language of a restrictive covenant is to be construed according to the plain and ordinary meaning attributed to it at the time of execution. Hardy v. Aiken, 369 S.C. 160, 166, 631 S.E.2d 539, 542 (2006).  A restrictive covenant is ambiguous when its terms are reasonably susceptible of more than one interpretation.   Id. at 165, 631 S.E.2d at 541. 
 
A restriction on the use of property must be created in express terms or by plain and unmistakable implication, and all such restrictions are to be strictly construed, with all doubts resolved in favor of the free use of the property.  Hamilton v. CCM, Inc., 274 S.C. 152, 157, 263 S.E.2d 378, 380 (1980) (citation omitted).  However, [t]he rule of strict construction governing restrictive covenants does not preclude their enforcement.  A restrictive covenant will be enforced if the covenant expresses the partys intent or purpose, and this rule will not be used to defeat the clear express language of the covenant.  Sea Pines Plantation Co. v. Wells, 294 S.C. 266, 270, 363 S.E.2d 891, 894 (1987).
Restrictive covenants may be created several ways, the most common of which are:  (1) by deed; (2) by declaration; and (3) by implication from a general plan or scheme of development.  Queens Grant II Horizontal Prop. Regime v. Greenwood Dev. Corp., 368 S.C. 342, 362, 628 S.E.2d 902, 913 (Ct. App. 2006).  When a deed describes land as shown on a certain plat, such plat becomes a part of the deed.  Carolina Land Co. v. Bland, 265 S.C. 98, 105, 217 S.E.2d 16, 19 (1975); Bennett v. Investors Title Ins. Co., 370 S.C. 578, 594, 635 S.E.2d 649, 657 (Ct. App. 2006).  
 
At issue in this case, is the term reserve as used in the Plat.  Reserve means [s]omething retained or stored for future use.  Blacks Law Dictionary 1334 (8th ed. 2004).  White Hat concentrates on the word reserved and contends the developer, who recorded the Plat, used this language to reserve his right to develop the Lot for golf course use.  However, White Hat also asserts this reservation did not affect the developers right to use the Lot for other purposes, such as for residential use.  While we agree the developer clearly intended to reserve his right to develop the Lot for golf course purposes, nothing in the phrase conveys a similar intent to develop the Lot for non-golf course use.[3]  Accordingly, we hold the clear, unambiguous language of the Plat restricts the Lot to golf course use only.  
 
II. Extrinsic Evidence
White Hat argues the master erred in disallowing:  (1) Guscios testimony of why the developer used the term reserved as opposed to restricted; and (2) Wieterss opinion as to whether the term reserved was ambiguous.  We disagree.
The admission and rejection of testimony is largely within the trial judges sound discretion and will not be disturbed on appeal absent a showing that the trial court abused its discretion or its decision was controlled by an error of law.  Mishoe v. QHG of Lake City, Inc., 366 S.C. 195, 203, 621 S.E.2d 363, 367 (Ct. App. 2005), cert. denied (Jan. 18, 2007).
Initially, we find the master correctly excluded Guscios and Wieterss testimony as extrinsic evidence. Where the language used in a restrictive covenant is unambiguous, there is no room for construction and the language must be enforced in accordance with its plain meaning. Heape v. Broxton, 293 S.C. 343, 345, 360 S.E.2d 157, 158 (Ct. App. 1987); see C.A.N. Enters., Inc. v. S.C. Health & Human Servs. Fin. Commn, 296 S.C. 373, 377-78, 373 S.E.2d 584, 586 (1988) (Extrinsic evidence giving the contract a different meaning from that indicated by its plain terms is inadmissible.); see also Moser v. Gosnell, 334 S.C. 425, 431, 513 S.E.2d 123, 126 (Ct. App. 1999) (stating when a covenant is clear and unambiguous, the court looks only to the language of the covenant and not to extrinsic evidence to determine the intent of the parties).  
 
Moreover, White Hat contends the master should have allowed Guscios testimony under the business records exception to the hearsay rule, Rule 803(6) of the South Carolina Rules of Evidence.[4]  However, White Hat never laid a proper foundation for the application of this exception.  Nor did he argue this exception to the master.  Accordingly, we are unable to determine whether Guscios testimony would lie within this exception and decline to rule on the merits.  See Staubes v. City of Folly Beach, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) (It is well-settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved for appellate review.); Ellie, Inc. v. Miccichi, 358 S.C. 78, 103, 594 S.E.2d 485, 498 (Ct. App. 2004) (Without an initial ruling by the trial court, a reviewing court simply would not be able to evaluate whether the trial court committed error.); see also Webb v. CSX Transp., Inc., 364 S.C. 639, 655, 615 S.E.2d 440, 449 (2005) (It is the appellants burden to present a sufficient record for appellate review.).
Additionally, Guscios proffered testimony was almost identical to Guscios answer to a previous question, to which Defeo failed to object.  Thus, even if the master erred in excluding the testimony, any error would be harmless given the testimony would have been cumulative.  See Smith v. Winningham, 252 S.C. 462, 467, 166 S.E.2d 825, 827 (1969) (Alleged error in the exclusion of offered testimony is of no avail if the same testimony or testimony to the same effect had been or was afterwards allowed to be given by the witness.); S.C. Dept of Highways & Pub. Transp. v. Galbreath, 315 S.C. 82, 86, 431 S.E.2d 625, 628 (Ct. App. 1993)(stating, [e]ven if the trial court erred in excluding evidence, there is no reversible error where the testimony would have been cumulative).
Further, Wieterss testimony, though based upon his analysis as a title examiner, amounted to a legal conclusion.  Accordingly, the master did not abuse his discretion in excluding it.  See Dawkins v. Fields, 354 S.C. 58, 66, 580 S.E.2d 433, 437 (2003) (In general, expert testimony on issues of law is inadmissible.).
CONCLUSION
We find the Plat clearly and unambiguously restricted the Lots use to golf purposes.  In light of this ruling, the master did not err in refusing to consider Guscios lay testimony and Wieterss expert opinion.  Therefore, the masters decision is
AFFIRMED.
ANDERSON, HUFF, and BEATTY, JJ., concur.

[1]  While Defeo included other parties and causes of action in his original and amended complaints, these parties and claims were dismissed during trial.  Defeo does not appeal this dismissal.
[2]  In its brief, White Hat lists six issues.  In the interest of brevity and clarity, we have consolidated our discussion to two issues.
[3]  Although this evidence does not affect our decision, we note other plats recorded by the same developer contained the expression, RESERVED FOR POSSIBLE USE FOR GOLF VILLAS AND CLUB PARKING.  (emphasis added).  This language appropriately conveys to future purchasers the grantors intent to use property for golf course purposes without forfeiting any right to use the property for other allowable purposes.
[4]  Rule 803(6) provides:

 A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness; 
 provided, however, that subjective opinions and judgments found in business records are not admissible. The term business as used in this subsection includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Rule 803(6), SCRE.