**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Lisa Cruz, Respondent,

v.

Heyward Bouknight and Kathy Bouknight, Appellants.

Appellate Case No. 2022-000947

Appeal From Lexington County
Brian L. Boger, Special Referee

Unpublished Opinion No. 2026-UP-024
Submitted September 23, 2025 – Filed January 28, 2026

**AFFIRMED**

Andrew S. Radeker and Sarah Megan Larabee, of
Harrison, Radeker & Smith, P.A., of Columbia, for
Appellant.

Elizabeth Franklin-Best, of Elizabeth Frankin-Best, P.C.,
of Columbia, Susan Ranee Saunders, of Motley Rice,
LLC, of Mount Pleasant, and James Ross Snell, Jr., of
Law Offices of James R. Snell, Jr., LLC, of Lexington,
for Respondents.

**PER CURIAM:** Lisa Cruz, a residential landowner in Brookgreen Terrace subdivision (the Subdivision), filed an action against Heyward and Kathy Bouknight (Appellants) seeking to enforce the Subdivision's restrictive covenants (the Covenants) and enjoin Appellants from keeping a manufactured home on their property. Both parties moved for summary judgment, with the central issue being whether a manufactured home is a trailer under the Covenants. Following a hearing, the special referee granted summary judgment in favor of Cruz. On appeal, Appellants argue the special referee erred by (1) finding their manufactured home fell under the Covenants' prohibition of trailers and (2) requiring Appellants remove the home from their lot. We affirm.

1. Appellants argue the special referee erred in finding their manufactured home was prohibited by the Covenants. We disagree and find the term "trailer" as used in the Covenants recorded in 1954 included mobile homes, which are more modernly called manufactured homes. *Taylor v. Lindsey*, 332 S.C. 1, 4, 498 S.E.2d 862, 863–64 (1998) (quoting *Palmetto Dunes Resort v. Brown*, 287 S.C. 1, 6, 336 S.E.2d 15, 18 (Ct. App. 1985)) ("'Restrictive covenants are contractual in nature,' so that the paramount rule of construction is to ascertain and give effect to the intent of the parties as determined from the whole document."); *Buffington v. T.O.E. Enters.*, 383 S.C. 388, 392, 680 S.E.2d 289, 291 (2009) ("A restriction on the use of the property must be created in express terms or by plain and unmistakable implication, and all such restrictions are to be strictly construed, with all doubts resolved in favor of the free use of property."); *Shipyard Prop. Owners' Ass'n v. Mangiaracina*, 307 S.C. 299, 308, 414 S.E.2d 795, 801 (Ct. App. 1992) (finding when "the language imposing restrictions upon the use of property is unambiguous, the restrictions will be enforced according to their obvious meaning"); *Taylor*, 332 S.C. at 4, 498 S.E.2d at 863 ("Words of a restrictive covenant will be given the common, ordinary meaning attributed to them at the time of their execution."). We find the term "trailer" is unambiguous and included the term mobile home within its meaning at the time the Covenants were recorded in 1954. *See* "trailer," Thorndike-Barnhart Dictionary (1954) (defining trailer as "a vehicle, often large, designed to be pulled along the highway by an automobile, truck"); "house trailer," *Oxford English Dictionary*, Oxford UP, https://doi.org/10.1093/OED/5032018329 (defining house trailer as "a caravan or . . . mobile home"); "mobile home," *Oxford English Dictionary*, Oxford UP, https://doi.org/10.1093/OED/5739007532 (defining a mobile home as "a large caravan or prefabricated transportable structure that is parked in a particular place and used as permanent living accommodation"); *see also* "mobile home," *Oxford English Dictionary*, https://doi.org/10.1093/OED/5739007532 (citing that, in 1954,

the New York Herald Tribune Book Review mentioned "[b]ooks pertaining to trailer houses – or mobile homes – published within the last five years" and in 1940, H.G. Wells' book *New World Order* stated, "[i]n such large open countries as the United States there has been a considerable development of the mobile home in recent years. People haul a trailer-home behind their cars and become seasonal nomads"). In *Heape v. Broxton*, this court found that a subdivision's 1980s covenants prohibiting "trailers" prevented a double-wide manufactured or mobile home from being built on the lots. 293 S.C. 343, 347, 360 S.E.2d 157, 160 (Ct. App. 1987). The court found that "[c]alling a trailer a 'mobile home' does not make it any less a 'trailer[,]'" and that the term mobile home was "simply an advertising euphemism for the term 'house trailer.'" *Id.* at 346, 360 S.E.2d at 159.

We similarly find that a manufactured home is the modern version of what was formerly known as a house trailer. *See Housing and Development Act of 1980*, Pub. L. No. 96-399, 94 Stat 1614 (replacing the term "mobile homes" with "manufactured home" in the act but not changing the definition). In addition, the South Carolina Code frequently uses the terms mobile homes and manufactured homes interchangeably. *See generally* S.C. Code Ann. § 23-43-20(5) (2025) ("'Mobile home' or 'manufactured home' means any residential dwelling unit constructed to standards and codes as promulgated by the United States Department of Housing and Urban Development."); S.C. Code Ann. § 31-17-310 (2007) (defining "mobile home" by now-repealed section 31-17-20 with an Editor's Note directing the reader to the definition of "manufactured home" in section 40-29-20); *compare* S.C. Code Ann. § 56-19-210 (requiring a certificate of title for sale or mortgage of a "mobile home"), *with* S.C. Code Ann. § 56-19-500 (2018) (describing the retirement of a title certificate of a "manufactured home").

Appellants further argue the court's ruling in *Henry v. Chambron*, 304 S.C. 351, 404 S.E.2d 518 (Ct. App. 1991), supports their argument that a manufactured home is fundamentally different from a trailer. In *Henry*, this court found the defendant could build a modular home in a subdivision that prohibited mobile homes and trailers. *Id.* at 355, 404 S.E.2d at 520. The court found that modular homes and mobile homes shared distinct differences:

> A modular home is built off site and is transported to its intended location in as many as twenty sections. The South Carolina Building Code Council must certify it as a modular home. As a prerequisite to certification it must be inspected and found in compliance with the standard building code applicable to homes built on site. Once the

sections are erected at the site, the modular home must be affixed permanently to the property. A mobile home, on the other hand, does not undergo the same certification process as a modular home and it need not comply with the standard building code applicable to site built homes. Furthermore, there is no requirement that a mobile home be permanently affixed to the property.

*Id.* at 352–53, 404 S.E.2d at 519.

The court rejected the subdivision's argument that "modular homes are excluded under the restriction, but were not specifically named because modular homes were not contemplated when the covenants were filed" and found that the property owners "could have prohibited modular homes by a simple expression of the intent to do so." *Id.* at 354, 404 S.E.2d at 520. Because "there [was] no evidence in the record that the property owners were prevented from amending the restriction to include modular homes at a later date[,]" the court found the defendant was not restricted from building a modular home in the subdivision. *Id.* at 354–55, 404 S.E.2d at 520.

We find *Henry* fails to support Appellants' argument as the case shows that the difference between a modular home and mobile home (or manufactured home or trailer) is significant. In this case, however, trailers and manufactured homes share similar, if not identical, characteristics.

Appellants argue their home is not a mobile home or a trailer because manufactured homes are not intended to be transported along the roads. We disagree. *See* S.C. Code § 40-29-20(9) (2011) ("'Manufactured home' means a structure, *transportable in one or more sections* which . . . is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities and includes the plumbing, heating, air conditioning, and electrical systems contained in it." (emphasis added)).

We find the special referee was correct in finding that a manufactured home is a "trailer" and vice-versa, for various purposes, including the ban on trailers in the Subdivision.

2. Appellants argue the special referee erred in ordering them to remove their manufactured home from the property because the Covenants only prohibit the

home from being used as a residence, not from being on the property at all. We find Appellants failed to preserve this issue as it was not ruled upon by the special referee. *See Herron v. Century BMW*, 395 S.C. 461, 465, 719 S.E.2d 640, 642 (2011) ("At a minimum, issue preservation requires that an issue be raised to and ruled upon by the trial judge."). Based on the foregoing, the order of the special referee is

**AFFIRMED.**

**WILLIAMS, C.J., and THOMAS and CURTIS, JJ., concur.**